Ann RUPLE, Plaintiff and Appellee,

v.

Earl BROOKS, Defendant and Appellant.

No. 14121.

Supreme Court of South Dakota.

Argued Nov. 30, 1983.

Decided July 25, 1984.

C.E. Light of Light Law Offices, Yankton, for plaintiff and appellee.

Michael E. Ridgway of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for defendant and appellant.

DUNN, Justice (on reassignment).

This is an appeal from a judgment entered on a jury verdict for plaintiff in an action for intentional infliction of emotional distress. We affirm.

On February 1, 1982, plaintiff's husband answered the home telephone five or six times, but the caller did not speak. On February 2, 1982, while plaintiff was not at home, her twelve-year-old babysitter received two telephone calls. During one of the calls the caller asked the babysitter if she "sucked cocks" like plaintiff did. Then on February 3, 1982, plaintiff answered the telephone, whereupon the caller asked, "Hey, baby, how about a blow job." A friend of plaintiff's who was present at the time was able to keep the caller on the line while plaintiff called the police. Because of a trap that had been placed on plaintiff's telephone, the police were able to trace the telephone call to defendant.

Defendant later pleaded guilty to a criminal complaint charging him with two counts of using "a telephone to call another

person with intent to terrorize, intimidate, threaten, harass, or annoy such person by using any obscene or lewd language or by suggesting any lewd or lascivious act contrary to SDCL 49–31–31." At the subsequent civil trial initiated by plaintiff, the criminal complaint was received into evidence for impeachment purposes. Defendant also admitted at trial that he had made the two obscene phone calls on February 2 and February 3. Much of plaintiff's case-in-chief consisted of testimony as to the traumatic effect which the obscene calls had upon plaintiff.

At the close of plaintiff's case, defendant moved for a directed verdict, but the motion was denied. Plaintiff then immediately moved for a directed verdict on the issue of liability. The trial court granted this motion and later instructed the jury that the only issue to be determined was the amount of damages, if any, plaintiff was entitled to recover. The jury returned a verdict for plaintiff in the amount of $5,000.00 actual damages and $15,000.00 punitive damages.

Defendant's first contention on appeal is that the trial court erred in granting plaintiff's motion for a directed verdict on the issue of liability. Defendant maintains that the jury, rather than the court, should have determined whether all the elements of the tort were present in this case. We disagree.

■ A trial court's ruling on a motion for a directed verdict is presumed to be correct, and this court will not seek reasons to reverse. In reviewing such a ruling, the evidence must be viewed in the light most favorable to the party against whom the motion was directed, and without weighing the evidence, this court must decide whether the verdict is properly supported. *Ziebarth v. Schneiders*, 342 N.W.2d 234 (S.D. 1984). If there is enough evidence to allow reasonable minds to differ, then the direct-

ed verdict is inappropriate. *Cox v. Brookings Intern. Life Ins. Co.*, 331 N.W.2d 299 (S.D.1983).

■ With this standard of review in mind, we examine the elements of the tort of intentional infliction of emotional distress. On two separate occasions we have stated that recovery can be had for mental pain, though no physical injury results, when the following elements are present: the act causing the anguish was done intentionally, the act was unreasonable, and the actor should have recognized it as likely to result in emotional distress. *Chisum v. Behrens*, 283 N.W.2d 235 (S.D.1979); *First National Bank of Jacksonville v. Bragdon*, 84 S.D. 89, 167 N.W.2d 381 (1969). *See also Gross v. United States*, 723 F.2d 609 (8th Cir.1983); *Gross v. United States*, 508 F.Supp. 1085 (D.S.D.1981). It has also been said of this tort that "there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." W. Prosser, Handbook of the Law of Torts § 12 (4th ed. 1971).[1]

■ Defendant claims that the directed verdict on the issue of liability at the close of plaintiff's case foreclosed him from presenting evidence of his motivations for making the obscene telephone calls. He alleges that his motives were anger and frustration over the difficulties his wife encountered in working with plaintiff, and that such motives would show a lack of intent to cause emotional distress. We find this argument to be unconvincing. No matter what defendant's specific motivation may have been, such motivation does not negate the fact that the act was done intentionally. In fact, defendant's admitted anger when making the telephone calls greatly strengthens a finding of intent to cause emotional harm. While defendant's

---

1. The Restatement (Second) of Torts § 46(1) (1965) sets forth the following rule: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The Restatement also contains a caveat which implies that there may be other circumstances under which an actor may be subject to liability for intentional or reckless infliction of emotional distress.

motivation may be relevant on the question of mitigation of damages, *Hannahs v. Noah*, 83 S.D. 296, 158 N.W.2d 678 (1968); 25 C.J.S. *Damages* § 127 (1966), it is not conclusive as to intent; one may have any number of motives for doing a particular act and yet still do the act intentionally. Here defendant was allowed to present evidence of his motives on the question of damages; thus he has no cause to complain.

Along with the intent to cause distress to plaintiff, it is readily apparent that defendant's actions were unreasonable. Rather than attempting to settle his problems with plaintiff through recognized and accepted procedures, defendant resorted to vulgar and obscene telephone calls—acts which our society has deemed unacceptable. SDCL 49–31–31. As indicated above, defendant pleaded guilty to two criminal charges of having violated SDCL 49–31–31.

In addition, defendant should have known that under the pressure-filled circumstances of the time, obscene calls such as these would result in emotional distress for plaintiff. Defendant knew that plaintiff had recently endured traumatic episodes at work and that plaintiff had recently been fired from her job. Such knowledge by defendant makes this type of conduct even more unreasonable. *Cf.* Restatement (Second) of Torts § 46, comment f (1965) (the outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to distress.) Therefore, we must conclude that the directed verdict for plaintiff was properly supported by the evidence. Defendant's own admissions and the settled facts provided sufficient basis for the court to direct a verdict on the question of liability.[2]

Defendant's second contention is that there was insufficient evidence produced at trial to justify the award of $5,000.00 in actual damages. In support of this proposition, defendant calculates that plaintiff incurred only $133.99 in medical expenses. On that basis, defendant urges us to reverse and remand for a new trial.

■ This court has recently stated that a new trial is not justified on the basis of insufficiency of evidence to support the verdict unless it appears that the evidence was conflicting on several controlling points and that the findings of fact were unreasonable, arbitrary, and unsupported in light of other proven evidentiary facts. In such cases, the court must view the evidence in the light most favorable to the successful party, and that party should have the benefit of every reasonable inference that can be drawn therefrom. *Klug v. Keller Industries, Inc.*, 328 N.W.2d 847 (S.D.1982).

■ Our review of the evidence in this case convinces us that there was sufficient evidence to support the verdict. As the trial judge noted, plaintiff became terrified and distraught after the obscene calls; she suffered spells of vomiting; she could not do her work properly; she had a difficult time doing household chores; she would awaken at night and be unable to get back to sleep; she was afraid to answer the telephone; she suffered headaches; etc. In sum, there was significant evidence of emotional distress on the part of plaintiff. Much of this anguish simply could not be measured in terms of medical bills; indeed, the very nature of this tort makes it impossible to quantify damages merely by adding up medical bills.

■ Along this same line, defendant claims that the entire damage award of

---

**2.** Although plaintiff's motion for a directed verdict was made at an unusual time (at the close of plaintiff's case), we conclude that the timing was not necessarily improper. SDCL 15–6–50(a) does not forbid a motion by plaintiff for a directed verdict at the close of his own case, and other authorities suggest that it is proper. *See* Smyser, The Rule 50(a) Directed Verdict, 19 S.D.L.Rev. 39 (1974) (either the plaintiff or defendant or both may move for a directed verdict at the conclusion of plaintiff's testimony); 9 C. Wright & A. Miller, Federal Practice and Procedure, *Civil,* § 2535 (1971) (although usually directed verdicts are against the party asserting a claim, a verdict may be directed for plaintiff if *the evidence is overwhelming in plaintiff's case.*)

$20,000.00 should be set aside as being the result of passion and prejudice on the part of the jury. When faced with this issue in the past, we have consistently held that a damage award should not be overturned unless it is so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, flagrantly outrageous, extravagant, and such that it manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption. *Klug, supra; Brewer v. Mattern,* 85 S.D. 356, 182 N.W.2d 327 (1970). Under the facts and circumstances of this case, we do not regard the total damage award as being outrageous or extravagant. Rather, we deem the amount of damages to be quite proper. As we stated in *Hulstein v. Meilman Food Industries,* 293 N.W.2d 889 (S.D.1980), punitive damages must be relatively large to accomplish the objective of punishing the wrongdoer and deterring others from similar wrongdoing.

Defendant's next contention is that the $15,000.00 punitive damage award is unsupported by any convincing evidence demonstrating defendant's ability to pay such a sum. This court has stated five factors which have a bearing upon the amount of punitive damages: 1) the amount allowed in compensatory damages; 2) the nature and enormity of the wrong; 3) the intent of the wrongdoer; 4) the wrongdoer's financial condition; and 5) all of the circumstances attendant to the wrongdoer's actions. *Hulstein, supra.* Defendant contends that the fourth factor was not sufficiently proven in this case.

An examination of the record indicates that defendant is in the construction business—building new homes, remodeling older homes, and doing general building work. He employs two persons in his business and owns a forklift, a truck, and various other tools. He also owns four vacant lots. Just recently he obtained a bid totalling $134,000.00 on a construction project and filed a performance bond for that amount. All of this evidence was unrefuted by defendant. Therefore, we conclude that there was sufficient evidence produced at trial to indicate defendant's ability to pay the punitive damage award.

We have also examined defendant's final issue and have found it to be without merit.

The judgment of the trial court is affirmed.

FOSHEIM, C.J., and MORGAN, J., concur.

HENDERSON, J., concurs specially.

WOLLMAN, J., dissents.

HENDERSON, Justice (concurring specially).

In joining the majority decision, I wish to express that I have absolutely no quarrel with the damage question or the liability proven up by plaintiff against defendant. The law set forth in the majority opinion with respect to this tort is legally palatable to me. However, "[d]irecting a verdict for the proponent of an issue is said to be 'reserved for extreme circumstances.'" *Shepard's Manual of Federal Practice* § 7.50, at 548 (2nd ed. 1979); *Wilson v. United States,* 530 F.2d 772 (8th Cir.1976). Especially should this be so when granting a motion for a directed verdict in favor of a plaintiff and against a defendant before the defendant has an opportunity to present his case. It is a very extreme ruling and I would caution trial courts to grant such a motion in very rare instances. SDCL 15–6–50(a) has lifted Federal Rule 50(a) verbatim.

> The court has power under the rule to grant a directed verdict at the close of the plaintiff's case. Nevertheless it has been said to be "the better and safer practice * * * to defer a ruling upon the motion for a directed verdict until both sides have finally rested."

9 C. Wright & A. Miller, *Federal Practice and Procedure, Civil,* § 2533, at 585–86 (1971).

In this instance, I believe the trial court properly granted the motion. It was apparent that defendant's defense was not a meritorious defense in law. Therefore, factual testimony would not uplift it to a legal

posture. It makes no sense to flail the facts when, in law, they constitute no basic defense. A trial judge has no business submitting a defense to a jury unless the defense is substantiated by legal theory. A plaintiff must have a cause of action supported in theory; so, likewise, must the defendant.

WOLLMAN, Justice (dissenting).

Plaintiff's motion for directed verdict came at an inappropriate time. The general rule is that such a motion be made: (1) after the opening statement of adverse counsel, if by such statement it is clearly shown no cause of action exists or that the cause of action is undeniable; (2) at the close of the evidence offered by an opponent; or (3) at the close of all the evidence.

5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 50.04 (2d ed. 1981) (footnotes omitted). As the Court of Appeals for the First Circuit has stated, "[N]either in the rules nor in the case law is there any basis for rendering a directed verdict against a defendant before he has had a chance to present evidence." *Gonzalez v. Le Concorde Campagnie D'Assurances*, 601 F.2d 606, 608 (1st Cir.1979). We held as much in *Habeck v. Sampson*, 87 S.D. 73, 202 N.W.2d 868 (1972).

Even if plaintiff's motion had been made at the close of defendant's evidence, it should not have been granted. When faced with a motion for directed verdict, a trial court must accept the evidence which is most favorable to the nonmoving party and indulge all legitimate inference in his favor that can fairly be drawn therefrom. *Budahl v. Gordon and David Assocs.*, 323 N.W.2d 853 (S.D.1982). If there is sufficient evidence to allow reasonable minds to differ, a directed verdict is inappropriate. *Cox v. Brookings Int'l Life Ins. Co.*, 331 N.W.2d 299 (S.D.1983). Although a verdict is appropriately directed when there is no question for the trier of fact, it is seldom that the party having the burden of proving a proposition establishes such proposition as a matter of law. *Ziebarth v.*

*Schnieders*, 342 N.W.2d 234 (S.D.1984), and cases cited therein. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure*, Civil, § 2535 (1971).

In *First National Bank of Jacksonville v. Bragdon*, 84 S.D. 89, 167 N.W.2d 381 (1969), this court recognized the tort of intentional infliction of emotional distress. In *Chisum v. Behrens*, 283 N.W.2d 235 (S.D.1979), we adhered to the *Bragdon* holding. *See also Gross v. United States*, 723 F.2d 609 (8th Cir.1983); *Gross v. United States*, 508 F.Supp. 1085 (D.S.D.1981). As recognized in *Bragdon* and *Behrens*, the tort of intentional infliction of emotional distress is based upon intentional, unreasonable conduct that the defendant knows would be likely to result in emotional distress. In essence, the *Bragdon-Behrens* rule is similar to that set forth in the Restatement (Second) of Torts § 46(1):

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Under the Restatement rule a plaintiff who has alleged intentional infliction of emotional distress must prove four elements: (1) outrageous conduct by defendant; (2) defendant's intentional causing, or reckless disregard of probability of causing emotional distress; (3) plaintiff suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's conduct.

*Powell v. Khodari-Intergreen Co.*, 334 N.W.2d 127, 129 (Iowa 1983); *see also Harsha v. State Savings Bank*, 346 N.W.2d 791 (Iowa 1984); *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976); *Amsden v. Grinnell Mutual Reinsurance Co.*, 203 N.W.2d 252 (Iowa 1972). *See generally* Givelber, *The Right to Minimum Social Decency and the Limits of Emotional Distress by Outrageous Conduct*, 82 Colum.L.Rev. 42 (1982); *Note, Minnesota's "New Tort": Intentional Infliction Of Emotional Distress*, 10 Minn.L.Rev. 349 (1984).

Comment (h) to The Restatement (Second) of Torts § 46 provides:

It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

See also Taylor v. Gilmartin, 686 F.2d 1346 (10th Cir.1982); Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344 (1961).

Defendant contends that his evidence could have controverted the existence of the required intent. Plaintiff had been employed by the city of Vermillion as its finance officer from 1980 until she was terminated from this position in January of 1982. Shortly thereafter, plaintiff commenced a lawsuit against the city and certain of its officials for injuries she allegedly suffered due to the termination. See Ruple v. Weinaug, 328 N.W.2d 857 (S.D. 1983). See also Ruple v. City of Vermillion, S.D., 714 F.2d 860 (8th Cir.1983). Defendant's wife was employed as a secretary to the city manager during the time that plaintiff served as finance officer. Defendant's evidence at trial consisted of testimony from his wife and other city employees, including the city manager, regarding the tension that existed at the city offices prior to plaintiff's being terminated and the apparent ill will that plaintiff had manifested towards defendant's wife. Defendant testified that he had made the telephone calls for the purpose of venting his anger and frustration over the difficulties his wife had encountered in working with plaintiff. He contends that the jury should have been allowed to consider this evidence on the question of his intent.

Although defendant had pleaded guilty to two charges of having violated SDCL 49–31–31, when civil litigation involves occurrences which gave rise to a criminal charge to which the defendant pleaded guilty the guilty plea is not conclusive as to civil liability and may be explained. Berlin v. Berens, 76 S.D. 429, 80 N.W.2d 79 (1957).

Hard as it is to generate any enthusiasm for defendant's position, I would hold that the jury should have been permitted to determine whether his conduct was so extreme and outrageous as to warrant a recovery by plaintiff. Regrettably, standards of speech and social discourse have become so debased that that which once was heard only in the locker room and in the barracks has become commonplace—if indeed not de rigueur in certain circles. Speech that we judges find to be grossly offensive may seem less than outrageous to a jury composed of individuals daily exposed to the suffocating verbal crudities epidemic in a society in which so many have apparently lost the ability to express themselves in other than the most graphic of terms. See Epstein, "Sex and Euphemism," Commentary, April 1984.

I would hold that reasonable minds could differ on whether defendant's conduct, when viewed in the light of his explanation of the background events that he claims prompted him to make the calls, warranted the imposition of liability under the tests set forth in the Restatement rule. Accordingly, the trial court should have permitted the jury to decide this issue.