Roger FRENCH and Margie French, Plaintiffs and Appellants,

v.

DELL RAPIDS COMMUNITY HOSPITAL, INC. and Donald J. Olson, Administrator, Defendants and Appellees.

No. 15901.

Supreme Court of South Dakota.

Argued March 24, 1988.

Reassigned Aug. 23, 1988.

Decided Nov. 30, 1988.

Rehearing Denied Jan. 4, 1989.

N. Dean Nasser, Jr., Nasser Law Office, P.C., and Scott N. Peters, Schiager & Peters Law Office, Sioux Falls, for plaintiffs and appellants.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and appellees.

MILLER, Justice (on reassignment).

Appellants, Roger French (French) and his wife Margie, appeal an order of partial

summary judgment in favor of Dell Rapids Community Hospital (Hospital), Dell Rapids, South Dakota, and its administrator, Donald J. Olson (Olson). French, a former laboratory supervisor at Hospital, sued Hospital and Olson after he was fired from his position. The trial court granted summary judgment for Hospital and Olson on claims of (1) intentional infliction of emotional distress, (2) breach of contract, (3) fraud and deceit, (4) "detrimental reliance," (5) breach of fiduciary duty, and denied French's motion to amend the complaint to include a cause of action for breach of a covenant of good faith and fair dealing.[1] We affirm in part, reverse in part and remand.

## FACTS

In April of 1983, the lab supervisor position at Hospital became open. French, at the urging of Olson,[2] applied for the job but was not hired because he lacked the four-year degree required for the position. In July 1983, the position again became open and Olson recommended that French be given the position. Although some members of the medical staff and the assistant administrator still preferred hiring a person with a four-year degree, Hospital agreed to hire French, who had sixteen years' experience. French received Hospital's personnel manual which set forth a ninety-day probation period. After French was hired, but prior to the completion of his probationary period, the job description for lab supervisor was rewritten to specifically allow a person with a two-year degree to hold the position.

Shortly after French began work, doctors and other medical staff began to complain about his performance. The complaints alleged mistakes with X-rays and lab tests, lack of contribution to the lab's work load, and poor relations with other employees. Meetings were held and Hospital's administration decided to terminate French at the expiration of his probationary period. He was offered a nonsupervisory position in the lab, but declined it. Subsequently, he was given ninety days to find another job and $2,000 severance pay.

Frenchs then brought suit against Hospital and Olson on the grounds stated above. The trial court granted summary judgment on all issues except for fraud stemming from French's purchase of a home. Frenchs appeal from that order.

## DECISION

### FRAUD AND DECEIT

■ We first consider the claim of fraud and deceit in inducing French to accept employment at Hospital. Liability for deceit is defined as follows: "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL 20-10-1. Under SDCL 20-10-2, deceit is either:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise made without any intention of performing.

The fraud claimed by French is that Olson contacted him, urged him to apply for the position and ultimately hired him for the job knowing that he was not academically qualified. French claims his hiring caused "dissatisfaction" with those at Hospital who would have preferred someone with a four-year degree. French further claims that Olson withheld the news of this dissatisfaction from him and that he was induced to accept employment in Dell

---

1. The trial court denied summary judgment on the issue of fraud stemming from French's purchase of a home in Dell Rapids, South Dakota.

2. French previously worked for Olson at the Kingsbury County Hospital in Lake Preston, South Dakota.

Rapids upon the intentional misrepresentations and material omissions by Olson that his academic credentials had been accepted. French further asserts the dissatisfaction stemming from his academic credentials eventually led to his dismissal.

Hospital claims that the complaints about French came only after he had started work and that the complaints stemmed from French's failure to carry his share of the work load, his lack of necessary lab expertise, and his inability to answer the questions of his lab technicians.

Because there is a factual discrepancy surrounding whether dissatisfaction with French accrued before he began working for Hospital (as French asserts) or afterward (as Hospital asserts), a genuine question of fact exists upon which the trial court erroneously granted summary judgment. *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968). We reverse that portion of the trial court's decision and remand it for further factual development.

## DETRIMENTAL RELIANCE

■ French also pleads a cause of action denominated as "detrimental reliance." French claims he relied on "verbal assurances" of permanent employment before leaving the hospital at Lake Preston and moving to Dell Rapids. Hospital and Olson deny that they made any assurances of permanent employment to French.

We believe that French's theory sounds in tort and is thereby subsumed in his cause of action for fraud and deceit. This belief is further buttressed by French's prayer for punitive damages (which infers a tort-based claim) and by our reading of SDCL 20–10–1, which provides liability for anyone who willfully deceives another with the intent to induce him to alter his position to his injury or risk. Given our reading of SDCL 20–10–1 and our prior reading case authority, *see Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120 (S.D.1977); *Culver v. Burnside*, 43 S.D. 398, 179 N.W. 490 (1920); *McAlpin v. Baird*, 40 S.D. 180, 166 N.W. 639 (1918), we affirm the circuit court's grant of summary judgment to Hospital.

## BREACH OF CONTRACT

■ French contends that he had a contract with Hospital for permanent employment, with job security, and that he could be terminated only for cause or for some reason beyond the control of Hospital. French claims that Hospital breached that agreement by terminating him because he was not academically qualified to be laboratory supervisor, especially when it knew those academic qualifications before he was hired.

French did not enter into a written employment contract with Hospital, nor was there a specified term of employment. Since there is no written contract or definite period of employment, we must examine Hospital's personnel manual, which was furnished to French, to determine whether it rises to the level of a contract. To do so, the manual must outline causes and procedures for termination. *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983).

Hospital's personnel manual contained the following provisions:

### EMPLOYMENT

. . . .

It is the policy of the hospital to provide steady employment with job security. However, if because of circumstances beyond the control of the hospital or in the interest of efficient operation, lay-offs become necessary, they shall be made on the basis of the individual's qualifications for a specific job, his efficiency and seniority, in the order named.

### PROBATION

The first three months of employment shall be considered by the hospital as a 'probationary period'. This is a period for the employee to adjust to the hospital procedures and schedules. It also allows the department head sufficient time to evaluate the employee. At the end of the probationary period, the department head decides if the employee's performance is satisfactory and if employment will be continued.

. . . .

WAGE AND HOUR ADMINISTRA-
TION

*Salaries:* All employees will be paid on an hourly basis, with the exception of the administrator.... At the end of the probationary period the employee will be evaluated by the department head and administration, to determine if the employment will be continued....

....

## TERMINATION OF EMPLOYMENT

....

The hospital will give the employee at least two weeks notice of discharge. The authority to terminate or suspend an employee shall rest with the administrator and the department head.

French contends that the personnel manual created a contract under *Osterkamp, supra.* However, he claims that as a "department head" he is not subject to the probation section. Hospital contends that French was an employee who was subject to the ninety-day probationary period or, alternatively, that he was an at-will employee who could be terminated for any reason at any time. *Hopes v. Black Hills Power & Light Co.,* 386 N.W.2d 490 (S.D. 1986).

The legal positions of the parties settle French's status in this matter. French contends that the personnel manual constituted a contract under *Osterkamp.* Hospital, without agreeing that the manual created a contract, asserts that French was terminated under the probation provisions of the manual. Given the state of the record, the admissions of the parties, and the provisions of the personnel manual, we find that the personnel manual applied to French and that French was subject to its probationary provisions.

■ The Hospital Board minutes of November 15, 1983, reveal that French's employment would not be continued beyond the probationary period because "his errors [and] academic preparation [have] planted doubts in his ability as lab head." Since the administration decided that French's performance was not satisfactory, they were not obligated to continue his employment beyond the probationary period. Because French is bound by the terms and conditions of the personnel manual, we affirm the trial court's decision with regard to the breach of contract claim.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

French also argues he should be able to pursue a cause of action for intentional infliction of emotional distress. In *Ruple v. Brooks,* 352 N.W.2d 652, 654 n. 1 (S.D. 1984), this court recognized that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Citing* Restatement (Second) of Torts § 46(1) (1965).

■ To establish a cause of action for intentional infliction of emotional distress, the plaintiff must show (1) extreme and outrageous conduct by the defendant; (2) that the defendant intended to cause *severe* emotional distress; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress must result. *Groseth International, Inc. v. Tenneco,* 410 N.W.2d 159 (S.D.1987). It is for the trial court to determine, in the first instance, whether a defendant's conduct may be reasonably regarded as so extreme and outrageous so as to permit recovery, or whether it is necessarily so. When reasonable minds may differ, it is for the jury to determine whether the conduct has been sufficiently extreme and outrageous to result in liability. Restatement (Second) of Torts § 46, Comment *h* (1965).

■ French argues that Hospital intentionally inflicted emotional distress. Hospital claims that its conduct was not so extreme or outrageous as to permit recovery. Considering the state of the evidentiary record, we believe that the trial court erred in dismissing French's cause of action.[3]

---

**3.** We note that the trial court did not *specifically* address this cause of action in its memorandum decision, but rather generally granted summary judgment on all causes of action except one.

## BREACH OF FIDUCIARY DUTY

■ The next issue is whether Olson breached a fiduciary duty to French. We do not find any close personal relationship between Olson and French or any past business relationship between them which created a fiduciary relationship. *See Littau v. Midwest Commodities*, 316 N.W.2d 639 (S.D.1982); *quoting Boos v. Claude*, 69 S.D. 254, 9 N.W.2d 262 (1943). Summary judgment was therefore proper.

## DENIAL OF MOTION TO AMEND COMPLAINT

■ Finally, French claims that the trial court erred in denying him permission to amend his complaint to include a claim for breach of an implied covenant of good faith and fair dealing. SDCL 15-6-15(a). A motion to amend is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion which results in prejudice to the moving party. *Tesch v. Tesch*, 399 N.W.2d 880 (S.D.1987). We find no clear abuse of discretion here.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., and SABERS, J., concur in part and dissent in part.

WUEST, Chief Justice (concurring in part and dissenting in part).

I concur with those portions of the majority opinion affirming the decision of the trial court. Bearing in mind the guidelines for granting summary judgment,[1] however, I dissent from the parts of the majority opinion that reverse the trial court's decision.

## FRAUD AND DECEIT

The majority opinion correctly states that liability for the tort of deceit is statutorily imposed on "[o]ne who willfully deceives another, with the intent to induce him to alter his position to his injury or risk...." SDCL 20-10-1. It also accurately sets forth conduct which, according to SDCL 20-10-2, constitutes deceit.[2] Although the majority opinion correctly states the law regarding deceit, it errs in concluding that summary judgment was inappropriate under the facts in the present case.

According to French, he was contacted and hired by Olson who was fully aware of the fact that French possessed only a two-year degree. French claims his being hired caused "dissatisfaction" with others in the Hospital who would have preferred someone with a four-year degree. As stated in the majority opinion, French further claims that Olson failed to disclose this dissatisfaction to him and that he was induced to accept employment in Dell Rapids by Olson's intentional misrepresentations and material omissions regarding the acceptance of his academic credentials. French contends that the dissatisfaction over his academic credentials resulted in his dismissal.

1. In *Dahl v. Sittner*, 429 N.W.2d 458, 461 (S.D. 1988), we recently stated:

   Summary judgment is properly awarded only when the moving party clearly shows that he is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." Summary judgment is an extreme remedy and is not intended as a substitute for a trial. A belief that the nonmoving party will not prevail at trial is an inappropriate basis for granting summary judgment on issues not shown to be sham, frivolous, or so unsubstantial as to obviate the futility of their litigation. If reasonable persons, upon examining the evidence, might reach different conclusions, a motion for summary judgment should be denied and the case tried on the merits. (Citations omitted).

2. SDCL 20-10-2 provides:

   A deceit within the meaning of SDCL § 20-10-1 is either:
   (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
   (2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
   (3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
   (4) A promise made without any intention of performing.

The record indicates that the dissatisfaction over French's credentials and his being hired did not arise until *after* he started working. In her deposition, Alinda Wiarda (Wiarda), a lab technician, stated that she felt cheated because she possessed a four-year degree while French did not. Wiarda, however, apparently did not disclose her sentiments to Olson until *after* French had been hired. Donna Overvaag (Overvaag), the assistant administrator, also stated in her deposition that neither Wiarda or the other lab employee complained to her about French's being hired even though he did not meet the four-year degree requirement in the job description. After French started working, however, Wiarda and the lab employee did complain about his failure to carry his share of the work load, his lack of lab expertise, and his inability to answer the questions of the lab technicians.

It is also apparent that some of the doctors shared doubts about either French's academic training or his previous work experience. These doubts, however, were not realized until after French started working. The record clearly indicates that when the decision was made to hire French, the medical staff was not as concerned with the fact that he lacked a four-year degree *per se* as it was with the possibility that he might be incapable of satisfactorily performing his duties.

Although some of the staff either held some reservations about French's ability or harbored some resentment because they were equally or more academically qualified, French did not indicate that those reservations would have been an important consideration for him or that he would not have taken the job if he had known about them. By his own affidavit, it is clear that French knew there was a preference for someone with a four-year degree. Furthermore, French's own testimony establishes that any dissatisfaction over his credentials and hiring arose *after* he was hired.

The trial court properly analyzed the fraud and deceit claim when it stated:

> The dissatisfaction arose after he took the new employment and *not before* he terminated his former employment at the other hospital. Based upon this factual scenario, this Court is hard pressed to determine where the fraud and deceit exists in inducing Mr. French to come to the Dell Rapids Hospital. Everything he requested he received, that is: the position, the job benefits, as well as the pay that went with it. It is after he arrived that things went sour, not before. The fact that problems arose afterwards, which is clear from everybody's testimony and affidavits, does not mean that fraud or deceit or misrepresentations were made to induce him to come to the Dell Rapids Hospital. The Court cannot find in the record any evidence that demonstrates that fraud or deceit was practiced upon Mr. French *before* he came to the Dell Rapids Hospital which caused him to leave the former employment.

Settled Record at 181 (emphasis in original). I agree with the trial court's analysis and believe summary judgment was appropriate on this cause of action.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

French also argues that he should be able to pursue a cause of action for intentional infliction of emotional distress. Again, the majority opinion correctly states the law as it pertains to this cause of action but misapplies it to the facts. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress...." *Ruple v. Brooks*, 352 N.W.2d 652, 654 (S.D. 1984) (*citing* Restatement (Second) of Torts § 46(1) at 71 (1965).[3] A prima facie case on

---

3. To show "reckless" infliction of emotional distress, a plaintiff must show the defendant *recklessly* caused severe emotional distress in a manner evincing or tantamount to an intent to inflict injury. Restatement (Second) of Torts § 46, comment (*h*) at 77 (1965) (emphasis supplied). "Recklessness" is acting in a manner which is "in deliberate disregard of a high degree of probability that the emotional distress will follow." Restatement (Second) of Torts § 46, comment (*i*) at 77 (1965); Restatement (Second) of Torts § 500 at 587 (1965). There are two types of reckless conduct. In one, the actor knows or has reason to know of facts

the tort of intentional infliction of emotional distress is established by the presence of the following elements: "(1) an act by defendant amounting to *extreme* and *outrageous* conduct; (2) intent on the part of the defendant to cause plaintiff *severe* emotional distress; (3) the defendant's conduct was the cause in-fact of plaintiff's injuries; and (4) plaintiff suffered an extreme emotional response to defendant's conduct." *Groseth Intern., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159, 169 (S.D.1987) (emphasis in original). The defendant's conduct must be "so extreme in degree as to go beyond all possible bounds of decency to be regarded as atrocious and utterly intolerable in a civilized community." *Strauss v. Cilek,* 418 N.W.2d 378, 379 (Iowa App.1987).

Turning to the summary judgment question, I note that two basic rules as to questions of law or fact appear in the Restatement (Second) of Torts and are mentioned in the majority opinion. First, it is for the *trial court* to determine, in the first instance, whether a defendant's conduct may be reasonably regarded as so extreme and outrageous so as to permit recovery, or whether it is necessarily so. Second, the *jury* determines whether the conduct has been sufficiently extreme and outrageous to result in liability *only* when reasonable minds may differ. Restatement (Second) of Torts § 46, comment (*h*) at 77 (1965).

French argues that the Hospital intentionally inflicted emotional distress. Although the trial court did not specifically address this question of law in its memorandum opinion, it did grant summary judgment as to all issues except one. Viewing the entire record, I cannot see where the trial court erred in dismissing French's cause of action for intentional infliction of emotional distress. There is no evidence that the Hospital acted with the

purpose of causing any distress. Nor do I find any actions by the Hospital that could reasonably be regarded as so extreme and outrageous so as to permit recovery. Therefore, I see nothing that would lead me to find that the trial court abused its discretion in granting summary judgment on this issue.

SABERS, Justice (concurring in part and dissenting in part).

I concur in the majority opinion in affirming summary judgment on breach of a fiduciary duty and to the extent that it reverses the trial court's grant of summary judgment on fraud and deceit and intentional infliction of emotional distress. However, I would go further and hold that the trial court erred in denying French leave to amend his complaint to include an action for breach of the covenant of good faith and fair dealing and in granting summary judgment on breach of contract.

### 1. Breach of the Covenant of Good Faith and Fair Dealing

Previously, I have urged this court to recognize an implied covenant of good faith and fair dealing in the employment context:

> The duty to treat an employee fairly and in good faith arises in *every* employment relationship. An "at will" employee may be terminated for reasons other than "for cause," but the duty imposed by the covenant of good faith and fair dealing requires that the employer exercise such good faith and fairness in termination decisions and proceedings. (emphasis in original).

*Blote. v. First Federal Savings and Loan Association,* 422 N.W.2d 834, 839 (S.D. 1988) (Sabers, J., dissenting).

The duty of good faith and fair dealing is well established in the law of contracts.

---

which create a high degree of risk to another and deliberately acts or fails to act in conscious disregard of that risk. In the other, the actor knows or has reason to know of the facts which create the risk but does not in fact realize the high risk involved, although a reasonable man in his position would do so. Restatement (Second) of Torts § 500 at 587–88 (1965); 4 S. Speiser, C. Krause & A. Gans, The American Law of Torts § 16.13 at 1018–19 (1987). "While an act

to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless." Restatement (Second) of Torts § 500, comment (*f*) at 590 (1965).

"*Every contract* imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (emphasis added). 2 *Restatement (Second), Contracts* § 205 (1979). The comment to § 205 defines this contractual obligation:

Good faith is defined in Uniform Commercial Code § 1–201(19) as *"honesty in fact* in the conduct or transaction concerned." ... Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and *consistency with the justified expectations of the other party*[.] (emphasis added).

2 *Restatement (Second), Contracts* § 205, comment a.

In this case French was told by Olson that his academic qualifications were no longer a problem. In fact, it is clear from the record that French's "deficient" academic qualifications were never approved. This evidence shows a lack of "honesty in fact." Further, French was told shortly before his dismissal that his job was secure. French alleges that this express assurance came from Olson even after French told Olson of his plans to buy a house if the job was secure. French's reasonable and objective reliance upon these assurances at least gave rise to a "justified expectation" of fair treatment, if not continued employment.

The imposition of a covenant of good faith and fair dealing does not transform an employment contract terminable at the will of either party into a "for cause" employment contract. The obligation of good faith does not concern whether the employee was terminated for good cause. Rather, the obligation assures that employees will be treated fairly and equitably by employers.

The ultimate issue on appeal is whether the trial court erred in denying French's motion to amend his pleading to include an action for breach of the implied covenant of good faith. SDCL 15–6–15(a) provides that, "a party may amend his pleading only by leave of court ... and leave shall be *freely given* when justice so requires." (emphasis added). The grant or denial of this motion is reviewed by this court under an abuse of discretion standard. *Behringer v. Muchow,* 72 S.D. 80, 30 N.W.2d 5 (1947). In view of these facts giving rise to the potential bad faith claim against the employer, justice would require that the motion to amend be granted. *J.I. Case Threshing Mach. Co. v. Eichinger,* 15 S.D. 530, 91 N.W. 82 (1902). I would hold that the trial court abused its discretion in not granting French leave to amend his complaint.

## 2. *Breach of Contract*

The majority concedes that French's employment relationship with the Hospital was no longer one at will because of the provisions in the Hospital employment manual. *Osterkamp v. Alkota Mfg., Inc.,* 332 N.W.2d 275 (S.D.1983). However, the majority holds that French was fired under the ninety-day probationary provision in the Hospital manual, and thus concludes that French's termination was proper. In doing so the majority ignores the oral statements made to French by Olson. These statements create a jury question whether the Hospital breached its contract with French and wrongfully terminated him.

The majority apparently concludes that the probationary provision in the Hospital manual is applicable to French by finding that the term department head, in relation to French, refers to Olson.[1] Accepting the majority's construction of the probationary provision, French approached Olson concerning job security nearly two and one-half months after French had commenced working and close to the end of the ninety-day probationary period. French could certainly have had a reasonable expectation

---

1. The probationary provision in the Hospital's manual states in part:

The first three months of employment shall be considered by the hospital as a 'probationary period'. This is a period for the employee to adjust to the hospital procedures and schedules. It also allows the *department head sufficient time* to evaluate the employee. At the end of the probationary period, the department head decides if the employee's performance is satisfactory and if employment will be continued. (emphasis added).

that Olson had already had "sufficient time" to evaluate French's performance and that the contingencies of his continued employment beyond the probationary period had been removed by Olson's assurance of job security.

An employer's breach of an employee's legitimate expectations of continued employment based upon the employer's handbook may give rise to an action for wrongful termination. *Woolley v. Hoffmann–La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985); *Arie v. Intertherm, Inc.,* 648 S.W. 2d 142 (Mo.App.1983); *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980). The question of whether these circumstances created a legitimate expectation of continued employment, and French was improperly terminated under the Hospital manual, is a question for the jury. *Toussaint, supra.*

Apart from the contract created by the employment manual, a separate "for cause" employment relationship may have been created by the oral assurances of job security to French. *Toussaint,* often cited as a leading authority in the area of employment relationships,[2] recognized that oral statements made by an employer, in addition to employment handbooks, may bind that employer to the employment rela-

tionship. The court in *Toussaint* stated that:

> Toussaint testified that he was told he would be with the company "as long as I did my job." Ebling testified that he was told that if he was "doing the job" he would not be discharged. Toussaint's testimony, like Ebling's, *made submissible to the jury* whether there was an agreement for a contract of employment terminable only for cause. (footnote omitted) (emphasis added).

*Toussaint,* 292 N.W.2d at 884.

Like the provisions of the Hospital manual, the alleged statements made by Olson may have bound the Hospital to the continued employment of French under *Toussaint.* At the least, French should be permitted his day in court to present this evidence for a jury's determination.

For the above reasons I would hold summary judgment was improperly granted on French's breach of contract claim.

---

**2.** *Sabetay v. Sterling Drug Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *Helle v. Landmark Inc.,* 15 Ohio App.3d 1, 472 N.E.2d 765 (1984); *Arie, supra; Simpson v. Western Graphics Corp.,* 293 Or. 96, 643 P.2d 1276 (1982); *Hamby v. Genesco, Inc.,* 627 S.W.2d 373 (Tenn. App.1981).