Nalonni PETERSEN, Plaintiff
and Appellant,

v.

SIOUX VALLEY HOSPITAL
ASSOCIATION, Defendant
and Appellee.

No. 17570.

Supreme Court of South Dakota.

Argued Jan. 14, 1992.

Decided April 22, 1992.

Rehearing Granted May 22, 1992.

Rita Haverly Allen, Hagen, Wilka, Schreier & Archer, P.C., Sioux Falls, for plaintiff and appellant.

Michael L. Luce, Roberto A. Lange, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee.

SABERS, Justice.

Employee appeals from summary judgment on her claims for (1) intentional infliction of emotional distress and (2) wrongful termination. We reverse and remand on (1) and affirm on (2).

### FACTS

Nalonni Petersen (Petersen) was employed by Sioux Valley Hospital Association (Hospital) in August of 1984. She worked as a technician in a nursing department, but was transferred to the pharmacy department in 1985. Petersen worked as a Technician I in that department until her termination in 1988. Her duties included packaging pharmaceuticals, filling carts with pharmaceuticals and making runs throughout the hospital with the carts. Additionally, Petersen was periodically responsible for entering pharmacy credits and charges on the computer.

When she first began working and again in October of 1984, Petersen signed a statement of understanding, which states in part:

I understand that if my work proves unsatisfactory during the first six (6) months of employment, the hospital reserves the right to discontinue my services at any time without notice.

. . . . .

I understand and agree to all the above statements and have received an Employee Personnel Handbook.

Petersen received an employee handbook which provided that procedures were subject to change. The handbook was changed twice during Petersen's employment. The version in effect during 1988 states in part:

The employee handbook and its provisions are designed to serve only as a guide to the hospitals policies and rules

and not as a contract of employment. *Employment can be terminated by the employee or the employer at any time for any reason.*

(emphasis added). The handbook also provided: "Employees may be dismissed for any conduct or performance that is deemed contrary to the best interests of the hospital."

In July of 1988, Gary Karel (Karel), director of the pharmacy department, called Petersen to his office. Karel informed her that complaints had been made against her by fellow employees. Petersen felt these complaints were precipitated by two people—Lynette Chase (Chase) and Pam Cox (Cox). The complaints were that Petersen was not doing her share of the work, leaving work early and missing work altogether. Petersen claims that all of her leaving and absences stem from approved holidays, snow days, illness/medical problems, or ill children. According to her, all of these absences were either pre-approved or not criticized. Karel suggested that she talk with Chase and Cox concerning her medical problems (severe headaches, strep throat and other illnesses) and to attempt to settle any difficulties. However, Petersen expressed her fear and reluctance of discussing these matters in a group setting, and Karel noted this in his report. An incident report was prepared as part of this meeting which was read and signed by Petersen.

Petersen was called to several more meetings. On each occasion, her medical problems and absenteeism were discussed. However, despite Karel's advice, Petersen did not talk with Chase about her medical problems. Relations between Petersen and several of her co-workers did not improve. As a result, Karel called a meeting at which Petersen, Cindy Haenfler (supervisor), Brian Kaatz (neutral party), Chase, and Kathy Sideras (co-worker) were present. Petersen claims that she was not informed of the nature of the meeting prior to its start. Chase and Sideras both aired grievances against Petersen, as she did against them.

Relations did not improve following this September 7 meeting. Petersen is alleged to have hung up twice on Chase while attempting to transfer calls for her and failed to complete her computer work prior to leaving on one occasion. From the time Karel first confronted Petersen with her absenteeism in July, she missed work five times—three times in August and twice in September.

On September 20, 1988, Karel showed Petersen her termination notice. The notice listed three reasons for termination: (1) Petersen's continued inability to get along with Chase; (2) Petersen's failure to enter credits and charges on the computer on September 23, 1988, and (3) habitual absenteeism. Following this notice, Petersen followed the Hospital grievance procedure, but her termination was upheld.

Petersen claims she suffered severe emotional distress as a result of Karel's conduct. She sued Hospital for (1) intentional infliction of emotional distress and (2) wrongful termination. One year prior to trial, the court granted summary judgment on the intentional infliction of emotional distress claim in favor of Hospital. Following Petersen's testimony at trial on the wrongful termination claim, the court granted summary judgment for Hospital stating that Petersen could not claim a version of the facts more favorable than her own testimony. Petersen appeals, claiming the court erred in granting summary judgment in favor of Hospital on both issues and in (3) refusing to allow her to present evidence at trial of previous employee evaluations.

### Summary Judgment.

Petersen claims the court erred by granting Hospital summary judgment on the wrongful termination claim and on the intentional infliction of emotional distress claim.

> Summary judgment is proper only where 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'

*Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D.1991) (quoting *Breen*

*v. Dakota Gear & Joint Co., Inc.*, 433 N.W.2d 221, 223 (S.D.1988)). "The evidence must be viewed most favorable to the non-moving party and reasonable doubts should be resolved against the moving party." *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987).

### 1. Intentional Infliction of Emotional Distress Claim.

The elements of intentional infliction of emotional distress are:

(1) An act by defendant amounting to *extreme* and *outrageous* conduct;

(2) intent on the part of defendant to cause plaintiff *severe* emotional distress;

(3) the defendant's conduct was the cause in-fact of plaintiff's injuries; and

(4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

*Groseth*, 410 N.W.2d at 169 (emphasis original). In *Wangen v. Kuudson*, 428 N.W.2d 242 (S.D.1988), we modified the above test and stated:

> Section 46(1) of the Restatement (Second) of Torts, which this court has previously cited with approval provides in part that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress is subject to liability for such emotional distress...." (Emphasis supplied.) Liability may attach where a defendant engages in "reckless" conduct, conduct which constitutes a deliberate disregard of a high degree of probability that the emotional distress will follow. Restatement (Second) of Torts § 46, comment (i). The actions of defendants sufficiently demonstrate a reckless disregard of a high probability that Wangen would suffer emotional distress. Under these circumstances, Wangen was only required to show that defendants intentionally or recklessly acted in a manner which would create an unreasonable risk of harm to him, and that they knew or had reason to know of facts which would lead a reasonable man to realize that such actions would create the harm that occurred.

*Id.* at 248 (citations omitted); *see also, Ruane v. Murray*, 380 N.W.2d 362 (S.D. 1986); *Ruple v. Brooks*, 352 N.W.2d 652 (S.D.1984). In *French v. Dell Rapids Community Hosp.*, 432 N.W.2d 285, 289 (S.D.1988), where we reversed summary judgment for hospital on intentional infliction of emotional distress, we stated:

> It is for the trial court to determine, in the first instance, whether a defendant's conduct may be reasonably regarded as so extreme and outrageous so as to permit recovery, or whether it is necessarily so. When reasonable minds may differ, it is for the jury to determine whether the conduct has been sufficiently extreme and outrageous to result in liability.

*Id.* (citations omitted).

Petersen based her claim of intentional infliction of emotional distress against Hospital on the conduct of Karel. She alleged that Karel was extreme, outrageous and unreasonable by: calling her to his office on approximately 10 occasions to discuss the complaints and her absenteeism; confronting her in an abrupt and accusatory manner; refusing to disclose the names of her co-workers who complained; raising the death of her child as a possible explanation for her behavior; encouraging her to disclose her medical problems with her co-workers in hopes of ending strife; sending her to the personnel department regarding the personality conflicts with her co-workers; arranging the September meeting with Chase and others without informing her; and by allowing them to confront her directly with their complaints. Petersen states by affidavit that these conversations were extremely stressful to her, making her very nervous and upset.

▇ Hospital urges this Court to use all of Petersen's testimony, including trial testimony, when reviewing the trial court's summary judgment ruling on her claim of intentional infliction of emotional distress. It is true that a party cannot claim a version of the facts more favorable to her claim than her own testimony. *Trammell*, 473 N.W.2d at 463; *Waddell v. Dewey County Bank*, 471 N.W.2d 591, 595 n. 3 (S.D.1991); *Miller v. Stevens*, 63 S.D. 10, 256 N.W. 152, 155 (1934). However, Petersen has not yet testified on emotional distress. In fact, Petersen's trial testimony on wrongful termination was not a part of the record at the time the court ruled on the emotional distress issue. Petersen correctly asserts that this testimony should not be considered when reviewing the trial court's ruling on this issue. In *Voutour v. Vitale*, 761 F.2d 812 (1st Cir.1985), *cert. denied* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986), the First Circuit Court of Appeals refused to consider later trial testimony in reviewing a grant of partial summary judgment, which also occurred approximately one year prior to the trial on the remaining issues.

> Our review is confined to an examination of the materials before the court at the time the rulings were made. Neither the evidence offered subsequently at the trial nor the verdict is relevant.

*Id.* at 817. *See also Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1036 (D.C.Cir. 1988); *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 37 (D.C.Cir.1987). Thus, we limit our review to the same evidence that was before the trial court at the time of the ruling.[1]

▇ Nothing in the record reflects that Karel was intentionally extreme or outrageous. Hospital argues that everything Petersen alleges as extreme or outrageous was done by Karel in hopes of resolving perceived difficulties within the pharmacy department. However, when viewing the evidence most favorably to Petersen, the failure to warn her as to the nature of the September meeting could be considered reckless, given Karel's knowledge of Petersen's fear of confrontational group meetings. Petersen argues that this and other conduct was intentional and reckless in view of her nature and condition. Where reasonable minds differ, it is for the jury to

---

1. Justice Wuest's writing relies heavily on Petersen's trial testimony to attack the validity of her emotional distress claim. However, this testimony was presented on the wrongful termination claim *not* the emotional distress claim. As noted above, this testimony is not reviewable in regards to this issue. *See Voutour*, 761 F.2d at 817.

determine, not the circuit court nor this Court. *French*, 432 N.W.2d at 289. Therefore, we reverse and remand for trial on this issue.

### 2. *Wrongful Termination Claim.*[2]

■■■ South Dakota is an employment-at-will state and exceptions to this policy are to be narrowly construed. SDCL 60-4-4;[3] *Larson v. Kreiser's, Inc.*, 472 N.W.2d 761, 764 (S.D.1991). This Court has recognized limited exceptions to this policy. In *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275, 277 (S.D.1983), this Court recognized an exception when an employee handbook stated that the employer would not discharge any employee "without just cause." *See also, Butterfield v. Citibank of South Dakota*, 437 N.W.2d 857, 859–60 (S.D.1989).

■■■ Petersen claims that Hospital's employee handbook creates an *Osterkamp* exception to the employment-at-will doctrine. *Butterfield* provided two ways in which handbook language could be construed as creating an employment contract:

First, such an agreement may be found where the handbook explicitly provides, in the same or comparable language, that discharge can occur "for cause only." Second, a "for cause only" agreement may be implied where the handbook contains a detailed list of exclusive grounds for employee discipline or discharge and, a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination. In short, the handbook must contain language indicating a clear intention on the employer's part to surrender its statutory power to terminate its employees at will (SDCL 60–4–4).

*Id.* at 859 (citations omitted).

Petersen claims that the handbook language: "Employees may be dismissed for any conduct or performance that is deemed contrary to the best interests of the hospital," creates an implied for cause only standard. As further evidence of this standard, she points to the "Statement of Understanding" language:

I understand that if my work proves unsatisfactory during the first six (6) months of employment, the hospital reserves the right to discontinue my services at any time without notice.

However, the handbook states on page 2:

The employee handbook and its provisions are designed to serve only as a guide to the hospital's policies and rules and *not as a contract of employment.* Employment can be terminated by the employee or the employer *at any time for any reason.*

(emphasis added). Therefore, there is no "explicit" language in the Hospital handbook limiting discharge to cause.

The second method of creating an implied employment contract under *Butterfield* requires a "detailed list of exclusive grounds" *and* "a mandatory and specific procedure which the employer agrees to follow *prior* to any employee's termination." *Butterfield*, 437 N.W.2d at 859. (emphasis added). It is clear from the language of the handbook that Hospital was *not* creating "a detailed list of exclusive grounds for ... discharge" and there is no pre-termination procedure in the handbook. Therefore, the court did not err in granting summary judgment in favor of Hospital. *Id.* at 860; *Bauer v. American Freight System, Inc.* 422 N.W.2d 435 (S.D.1988). Petersen's employment could be terminated by the employer "at any time for any reason."

### 3. *Refusal to Admit Prior Employee Evaluations.*

■■■ Peterson claims that the court erred in refusing to admit her employee evalua-

---

**2.** Petersen claims that the trial court erred in ruling on Hospital's motion for summary judgment on this issue at the close of her testimony, but prior to the remainder of her case. While there is some merit in this argument, Petersen failed to support it with authority or evidence that she was harmed by the court's irregular timing. Therefore, she waived this claim on appeal. SDCL 15–26A–60(6); *Ashker v. Solem,*

457 N.W.2d 473, 478 (S.D.1990); *Nielsen v. McCabe,* 442 N.W.2d 477, 480 (S.D.1989).

**3.** SDCL 60–4–4 states:

An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute.

tions for the years preceding 1988. The standard of review for evidentiary rulings is abuse of discretion. *Larson*, 472 N.W.2d at 764; *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987).

■ Petersen sought to introduce her evaluations from 1986 and 1987. The events giving rise to the claim of wrongful termination occurred in 1988. There was no dispute as to her conduct and no issue raised concerning events preceding 1988. Therefore, the evaluations from 1986 and 1987 were irrelevant and inadmissible. SDCL 19–12–1 and 2. The court did not abuse its discretion in refusing to admit this evidence at trial.

MILLER, C.J., and HENDERSON and AMUNDSON, JJ., concur.

WUEST, J., concurs in part and dissents in part.

WUEST, Justice (concurring in part and dissenting in part).

I concur with the majority on the wrongful termination claim. I dissent on the intentional infliction of emotional distress issue. Under the majority theory, we must send the case back so a new trial may be held. Petersen cannot repudiate her previous trial testimony; hence, the trial court must direct a verdict. This may result in another appeal, and then, we must consider the trial testimony and uphold the trial court. To me, that is a waste of judicial resources.

The majority opinion cites *Voutour v. Vitale*, 761 F.2d 812 (1st Cir.1985); *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1036 (D.C.Cir.1988); and *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 37 (D.C.Cir.1987) as authority we may not consider the trial testimony of Petersen to support the summary judgment granted on the intentional infliction of emotional distress issue.

In *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 285 (3rd Cir. 1991), the third circuit held:

Our review of summary judgment motions is plenary. 'We may affirm if, and only if, on the basis of the complaints filed by three [parties] there was no set of facts which could be proven to establish' liability. *Rose v. Bartle*, 871 F.2d at [331] 342 [ (3rd Cir.1989) ]. Moreover, we will consider any additional evidence in the record before us, even though that evidence may have been submitted to the district court after it had ruled on Ford's motion, in order to avoid any prejudice to Altran and as part of our plenary review.

(footnote omitted). The third circuit acknowledged *Frito–Lay Inc.* and *Voutour*, but found those cases inapplicable. I believe the same rationale should be applied in this case since Petersen's claim cannot arise above her own testimony. Nor, can she change it as the majority seems to suggest.

Petersen's own trial testimony established Karel had been caring and understanding when Petersen lost a child in April of 1986. Sioux Valley Hospital, in general, had accommodated Petersen by granting her leave and permitting her to return and work part-time for a period following her child's death.

After several employees began complaining about Petersen's work and absenteeism, Karel, on July 12, 1988, met with Petersen and gave Petersen the opportunity to explain her side. Karel even pledged to attempt to address the rumors about Petersen.

Karel met with Petersen on several occasions after the July 12 meeting to discuss continuing problems between Petersen and certain co-workers. Petersen knew the identity of those co-workers. Karel's suggestion to Petersen was to inform the disgruntled co-workers about Peterson's health problems so that the co-workers could understand Petersen's position. Petersen refused to do so, however. During these meetings, according to the testimony of Petersen herself, Karel expressed concern about Peterson's health problems and even confided to Petersen that his wife experienced similar migraine headaches.

Ultimately, Karel on or about September 7, determined that a meeting was necessary between Petersen and two other tech-

nicians to discuss the problems and to attempt to resolve them. Petersen concedes Karel called the meeting trying to resolve the problems within his department. During the meeting, two co-workers aired their grievances with Petersen, and Petersen responded by airing her belief one co-worker was sometimes hungover and was stuck up. As a result of the meeting, Petersen and the two co-workers agreed they would stop bickering and fighting and would try to move forward and mend the relationships in the department.

Petersen's own trial testimony makes clear that, as a matter of law, Karel did not act in a manner "exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 169 (S.D. 1987); *see also Mackintosh v. Carter*, 451 N.W.2d 285, 287 (S.D.1990). Rather, Petersen's own testimony establishes Karel was concerned about the friction within his pharmacy department and was attempting to resolve the friction by meeting with Petersen, making suggestions to Petersen, and listening to Petersen's explanations of the problems. Such conduct, as a matter of law, does not satisfy the first element of intentional infliction of emotional distress because it is not extreme and outrageous conduct.

Moreover, as a matter of law, the second element of intentional infliction of emotional distress is not met. The second element requires "intent on the part of the defendant to cause plaintiff severe emotional distress," *Groseth Intern.*, 410 N.W.2d at 169; *see also Mackintosh*, 451 N.W.2d at 287, or reckless conduct which causes severe emotional distress, *Wangen v. Knudson*, 428 N.W.2d 242, 248 (S.D.1988). Petersen has pointed to no evidence whatsoever Karel intended to cause Petersen severe emotional distress. Nor did any of the evidence indicate "a deliberate disregard of a high degree of probability that ... emotional distress [would] follow." *Id.* (quoting Restatement (Second) of Torts § 46, comment (i)). To the contrary, Petersen's own testimony indicates Karel was simply trying to assist Petersen in overcoming and resolving the friction between Petersen and several other technicians in the pharmacy department at Sioux Valley Hospital. Petersen can claim no better version of the facts than that to which she has testified. *See Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 463 (S.D.1991); *Waddell v. Dewey Cty. Bank*, 471 N.W.2d 591, 595 n. 3 (S.D.1991); *Heer v. State*, 432 N.W.2d 559, 567 (S.D.1988) (citing cases); *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 508 (S.D. 1977).

Petersen relies heavily upon an affidavit she signed before trial. Many of the assertions in the affidavit are conclusory and inconsistent with her own trial testimony. Because the trial testimony of Petersen contains her sworn testimony in open court before a jury on both direct and cross-examination, the trial testimony should be given much greater weight than the one-sided affidavit. *See generally* 3 Am.Jur.2d *Affidavits* § 30, at 490–91 (1986); 2 *Jones on Evidence* § 9.29, at 247 (1972); 3 *Jones on Evidence* § 12.24, at 387 (1972). I would affirm the trial court in granting Sioux Valley Hospital's motion for summary judgment on the intentional infliction of emotional distress claim.