**David M. WRIGHT, Plaintiff–Appellant,**

**v.**

**COCA COLA BOTTLING CO. OF
CENTRAL SOUTH DAKOTA,
INC., Defendant–Appellee.**

**No. 15564.**

Supreme Court of South Dakota.

Considered on Briefs May 22, 1987.

Decided Oct. 28, 1987.

Albert Fox, Larson, Sundall, Larson, Schaub & Fox, P.C., Chamberlain, for plaintiff-appellant.

John L. Morgan, Morgan, Fuller, Theeler & Cogley, Mitchell, for defendant-appellee.

MILLER, Justice.

Plaintiff (appellant) brought an action for negligence and breach of warranty against a soft drink manufacturer seeking to recover for his alleged injuries when he drank from a soft drink bottle that he claims contained a decomposed mouse. Appellant appeals from a summary judgment for defendant. We reverse and remand.

One summer day in 1983 appellant purchased a bottle of 7UP from a vending machine at his place of work. When he took a drink from the bottle he noticed it had a very bad taste. After taking another small sip to taste the 7UP, appellant looked into the bottle and saw something in it. His stomach "started coming up," he gagged several times, and he thought he was going to vomit. Although he started to go to the restroom, he never actually vomited. Instead, he returned to show his co-workers what was in the bottle. Two photographs of the bottle, which was sealed shortly after the incident, reveal an undiscernable mass floating in the remaining pop.

Appellant sought no medical treatment after drinking the pop, although he claimed he had thoughts of getting sick throughout the day, and of a previous unpleasant experience when his stomach was pumped. He also had a single episode of diarrhea, although facts uncovered in the discovery process do not reveal any expert opinions about the cause of this. Appellant now checks all bottled soft drinks he consumes and no longer has a desire for 7UP in his whiskey. Otherwise, he is only bothered by the "psychological thing" and has strange dreams and thoughts of what might have happened if one of his children had drank the pop. None of the evidence reveals any subsequent embarrassment suffered by appellant as alleged in his brief.

Appellant contends that the trial court erred in granting summary judgment. In this case, the issue presented by the parties is whether, as a matter of law, the gagging, diarrhea, nightmares, worry and loss of enjoyment of 7UP that appellant suffers are sufficient physical injuries for which defendant should be liable for his alleged negligent conduct;[1] or are these injuries so

1. Appellant's alleged cause of action for breach   of implied warranty has not been addressed by

inconsequential that as a matter of law defendant is not liable. If this should be a question of law and the injuries appellant suffered are insufficient to warrant a recovery, summary judgment for defendant may have been proper. However, if the extent of the injuries should not be determined as a matter of law, then the jury should be allowed to determine the extent of defendant's liability, if any.

As to intentional torts, this court has held,

> [T]hat recovery can be had for mental pain, though no physical injury results, when the following elements are present: the act causing the anguish was done intentionally, the act was unreasonable, and the actor should have recognized it as likely to result in emotional distress. *Chisum v. Behrens,* 283 N.W.2d 235 (S.D.1979); *First National Bank of Jacksonville v. Bragdon,* 84 S.D. 89, 167 N.W.2d 381 (1969). *See also Gross v. United States,* 723 F.2d 609 (8th Cir. 1983); *Gross v. United States,* 508 F.Supp. 1085 (D.S.D.1981). It has also been said of this tort that "there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." W. Prosser, Handbook of the Law of Torts § 12 (4th ed. 1971).

*Ruple v. Brooks,* 352 N.W.2d 652, 654 (S.D. 1984); *see also, Ruane v. Murray,* 380 N.W.2d 362 (S.D.1986). We have also said, "When physical injury accompanies a

fright as its effect, the injured party may recover for the fright, for the physical injury, and for any mental injury accompanying such fright and physical injury, exactly as one can recover where the fright is the result of a physical injury." *Sternhagen v. Kozel,* 40 S.D. 396, 398, 167 N.W. 398, 399 (S.D.1918). In *Brooks, Chisum,* and *First National Bank of Jacksonville,* the court decided issues of liability for fright and physical injuries caused by a defendant's *intentional, reckless,* or *malicious* acts; and in *Sternhagen* the nature of the defendant's acts is not revealed as either negligent or intentional. *See also Restatement (Second) of Torts* § 46(1) (1965). Consequently, none of these authorities or any other South Dakota decisions clearly reject the proposition that a defendant may be held liable for his *negligence* that causes fright or mental distress and results in some physical injury.[2] *See Gustafson v. Gate City Co-op Creamery,* 80 S.D. 430, 126 N.W.2d 121 (1964) (In an action based on negligence, evidence was sufficient to support verdict for appellant who suffered physical injury of a cut on her lip caused by broken glass in butter.).

No South Dakota decisions have clearly discussed the issue of liability for negligent infliction of emotional distress or the degree of "physical injuries" that must result before a tortfeasor may be held liable. The authorities generally recognize a cause of action for negligently causing some foreseeable emotional distress accompanied by bodily harm. *See e.g. Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171 (1982),

---

either party and the trial court apparently did not rule on it. We note that actions for breach of implied warranties have been maintained in similar cases under the Uniform Commercial Code. *See* SDCL 57A-2-314; *Jackson v. Cushing Coca–Cola Bottling Co.,* 445 P.2d 797 (Okla. 1968): *Young v. Coca–Cola Bottling Co.,* 109 R.I. 458, 287 A.2d 345 (1972); *cf. Whitehorn v. Nash–Finch Co.,* 67 S.D. 465, 293 N.W. 859 (1940) (a pre-UCC action; in the absence of privity with the original manufacturer liability may be premised on negligence rather than warranty); *see generally* Annotation, *Liability of Manufacturer or Seller for Injury Caused by Beverages Sold,* 77 A.L.R.2d 215, 243 (1961).

**2.** Because of the resulting "physical injuries" of nausea and diarrhea, which we assume to have

occurred for purposes of considering the summary judgment, this case does not present a question of whether recovery may be sought for negligently causing only mental distress unaccompanied by physical manifestations. *See* 1 J. Dooley, *Modern Tort Law* § 15.06, 376 (1982); 3 F. Harper et. al, *The Law of Torts* § 18.4, 681–683 (1986); 4A *Personal Injury, Fright, Shock, Emotional Distress,* § 1.08[1], 142–144 (L. Frumer ed. 1982); W. Keeton, *Prosser & Keeton on the Law of Torts* § 54, 361, fn. 21–25 (1984); *Restatement (Second) of Torts* 436A (1965) (see footnote 3); *see also, Sternhagen, supra.* A brief legal news item also notes the recent growing acceptance of psychic harm cases. Blodgett, *Psychic Harm Cases Grow,* August 1, 1987, A.B.A. Journal 38.

especially fn. 5; *see also Modern Tort Law, supra* §§ 15.04–15.06; *The Law of Torts, supra; Personal Injury, supra* § 1.08; *Prosser & Keeton, supra; Restatement, supra,* § 313, 436, 436A.[3]

Many of the policy objections to allowing a recovery for negligently caused mental distress and any resulting physical consequences have been answered and will not be debated again here. Nevertheless,

> [A]t least three principal concerns continue to foster judicial caution and doctrinal limitations on recovery for emotional distress: (1) the problem of permitting legal redress for harm that is often temporary and relatively trivial; (2) the danger that claims of mental harm will be falsified or imagined; and (3) the perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant, whose conduct was only negligent, for consequences which appear remote from the "wrongful" act ... such are the basic policy issues with which the courts continue to struggle in defining the limits of liability for negligently inflicted emotional harm.

*Keeton, supra* § 54, 360–361; *see also, Harper* et al § 18.4; *Restatement* § 436A, comment b; Annotation, *Right to Recover for Emotional Disturbance or its Physical Consequences* 64 A.L.R.2d 100, § 6 (1959). In spite of these criticisms, we believe the jury should be entrusted with determining whether the injury is so serious or substantial to warrant recovery. If the harm is trivial or temporary, falsified or imagined, the jury's decision will be made accordingly; likewise if the harm is remote from the act, a jury's award may be proportionate. Juries are commonly charged with the responsibility of judging the credibility of witnesses and the nature and extent of injuries. *See e.g.* South Dakota Pattern Jury Instructions (Civil) 2.01, 2.04, 2.07, 2.12 (credibility of witnesses, weight of evidence, experts), 30.01 and 30.-02 (damages, injury). Thus, despite the *Restatement's* apparent position that as a matter of law a recovery will not be allowed for "inconsequential" or "trivial" physical harm, *Restatement* § 436A, comment b. & c., questions of the extent of plaintiff's right to recover from consuming tainted food are appropriate for a jury. *See e.g. Way v. Tampa Coca–Cola Bottling Co.,* 260 So.2d 288 (Fla.Dist.Ct.App. 1972) (directed verdict for defendant reversed where plaintiff vomited once and was nauseated for two days); *Wolfe v. Great Atlantic & Pacific Tea Co.,* 143 Ohio St. 643, 56 N.E.2d 230 (1944) (the Ohio Court of Appeals reversed jury verdicts for plaintiffs and Ohio Supreme Court reversed the Court of Appeals); *Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo.1983) (directed verdict for defendant reversed).

The trial court's grant of a summary judgment for defendant is reversed and the case is remanded for trial.

WUEST, C.J., and SABERS, J., concur.

---

**3.** The *Restatement* provides in part:

§ 313(1): If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm....

§ 436(1): If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability.

(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability....

§ 436A: If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

HENDERSON, J., concurs specially.

MORGAN, J., deeming himself disqualified did not participate.

HENDERSON, Justice (specially concurring).

Due to germane facts contained in the record, which are unrecited in this opinion, omissions of pertinent authority in this Court, and disavowing any conceptual interrelationship with intentional tort law (it is akin to academic folly under the facts here), this writing is filed. Intentional tort law has no bearing on this case, one which sounds in negligence and breach of warranty.

This Court has early frowned on dismissals, by summary judgment, in negligence actions. *Wilson v. Great N. Ry.*, 83 S.D. 207, 157 N.W.2d 19 (1968). Sixteen years later, in *Nemec v. Deering*, 350 N.W.2d 53, 55–56 (S.D.1984), we reapproved our holding in *Wilson*. Summary judgments are not suited for negligence actions and an issue of negligence is ordinarily a question of fact. It increasingly appears that the courts of this state have veered sharply away from our early expressions in *Wilson*. Summary judgments are quite commonplace. We reaffirmed, *inter alia*, "summary judgment is an *extreme remedy* and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue should be resolved against the movant." *American Indian Agr. Credit v. Fort Pierre*, 379 N.W. 2d 318, 320 (S.D.1985) (citing *Wilson*, 83 S.D. at 212–13, 157 N.W.2d at 22) (emphasis supplied). It behooves me to remind the reader that, under SDCL 15–6–56(c), "[t]he judgment sought shall be rendered forthwith *if* the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, *if* any, show that *there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." (Emphasis added.) Likewise, in a summary judgment case, all the evidence and every reasonable inference arising therefrom must be viewed most favorably toward the nonmoving party (plaintiff here). *Trapp v. Madera Pacific, Inc.*, 390

N.W.2d 558, 562 (S.D.1986). This is all "old hat," but what does it mean if we do not live by it?

We shall examine the documents on file. It is our duty to do so. In *Hurney v. Locke*, 308 N.W.2d 764, 767 (S.D.1981), we indicated that this Court conducts "an independent review of the record." A perusal reveals: pleadings, four depositions, interrogatories, admissions, and four exhibits. Two exhibits are colored photographs reflecting a very visible, dark floating mass in a 7UP bottle. Plaintiff's Interrogatory 17 asks: "Do you have any reason to believe that the foreign object in the pop bottle is not a mouse as indicated by reports and tests sent to you? If so, please indicate why." Answer: "No." Yet, on page 26 of the Settled Record, we find this (Defendant's Response to Requests for Admission): "5. Admit that the product delivered by the Defendant was not fit for human consumption." Response: "Defendant denies the matter." A genuine fact issue appears to surface.

Decomposing mice cannot be conducive to tasty "pop" or fit for human consumption, one would ask, perhaps incredulously? It must be a question for the jury then, says the ultra conservative, as he/she balances his/her common sense with the showing. Add, however, a dash of depositional input. We are examining the record. *Hurney* instructs to do so. It seems the defendant, "Coca Cola Bottling Co. of Central South Dakota, Inc.," also sells "7UP." This company makes deliveries of "pop" (including "7UP") at plaintiff's place of employment, a radiator repair shop, in Chamberlain, South Dakota, known as United Auto Parts. The 7UP bottle in question came from a machine, serviced by the Defendant, said Coca Cola Company. Two depositions reflect that the "Coke man" delivered "7UP" twice a week to Chamberlain; he delivered "7UP" to United Auto Parts once a week. Deposition of Joe Nesladek, page 12; deposition of plaintiff, pages 76–77. Nesladek is a fellow employee of plaintiff at United Auto Parts and witnessed this entire incident on July 18, 1983.

This brings us to *Gustafson v. Gate City Co-op Creamery*, 80 S.D. 430, 432, 126 N.W.2d 121, 122 (1964), and we consider mice in "soda" bottle (Eastern vernacular) or mice in a "pop" bottle (Western Plains vernacular). We think of "impurities." It is written, 126 N.W.2d at 122 thereof: "[A]lso, that an inference of negligence arises from the mere presence of impurities in food when such impurities, and foreign matter, would not ordinarily appear without negligence of the manufacturer."

Evidence in these proceedings must be viewed most favorably to the nonmoving party (plaintiff here). *Trapp*, 390 N.W.2d at 562. Plaintiff's evidence indicates physical injury, not just emotional trauma, such as: (a) bitter taste, (b) regurgitating, (c) diarrhea, (d) stomach wrenching. If his claims of physical injury are all mental aberrations, and not really symptoms he suffered from this apparent foul liquid, it is the jury, not a trial judge, who should say: "'tisn't so!" In *Wallace v. Coca–Cola Bottling Plants, Inc.*, 269 A.2d 117 (Me. 1970), a jury verdict of $2,000 was upheld determining liability against defendant (case was submitted only on negligence). Distilling the facts, plaintiff drank from a bottle containing an unpackaged prophylactic. This resulted in physical distress and emotional upheaval. His thoughts of the experience (such as instant plaintiff claims here) caused him to suffer mental distress. *Inter alia*, the Maine Court held:

> The foreign object was of such a loathsome nature it was reasonably foreseeable its presence would cause nausea and mental distress upon being discovered in the place it was by a consumer *who was in the process of drinking from the bottle*. The mental distress was manifested by vomiting.

*Wallace*, 269 A.2d at 121–22 (emphasis in original). Here, upon opening the capped bottle, plaintiff allegedly similarly suffered and it appears to be corroborated by at least one on-the-scene employee.

Ever so vigilant and mindful we should be of South Dakota Constitution, art. VI, § 6, which provides:

> The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy, but the Legislature may provide for a jury of less than twelve in any court not a court of record and for the decision of civil cases by three-fourths of the jury in any court.

The provision preserves the right to a jury trial in those causes that were triable to a jury at common law. *Grigsby v. Larson*, 24 S.D. 628, 124 N.W. 856 (1910).

A jury trial should be held herein.