Evelyn BASS, Plaintiff and Appellant,

v.

HAPPY REST, INC., a South Dakota Corporation, Raybill Investments, and Lewis W. Stroud, Defendants and Appellees.

Evelyn BASS, Plaintiff and Appellee,

v.

HAPPY REST, INC., a South Dakota Corporation, Defendant and Appellant,

and

Raybill Investments and Lewis W. Stroud, Defendants.

Nos. 18029, 18053.

Supreme Court of South Dakota.

Considered on Briefs March 16, 1993.

Decided Oct. 13, 1993.

Lee Burd, Sioux Falls, for plaintiff and appellant.

Daniel J. Nichols, Sioux Falls, for defendants and appellees and for defendant and appellant Happy Rest.

GORS, Circuit Judge.

Evelyn Bass (Bass) appeals summary judgment for Happy Rest, Inc., (Happy Rest), Raybill Investments, Inc. (Raybill) and Lewis W. Stroud (Stroud) on all claims except breach of contract against Happy Rest. Happy Rest appeals a judgment for Bass for breach of contract. We affirm in part, reverse in part and remand.

## FACTS

Stroud and his wife owned all of the shares of Raybill, a Missouri corporation. Raybill owned all of the shares of Happy Rest, a South Dakota corporation. Happy Rest owned and operated the Happy Rest Motel. Raybill owned the land on which the motel was situated.

On August 8, 1988, Happy Rest, through Stroud, hired Bass to run the motel for $500 per month plus ten percent of the profits and free room and utilities. After one year, Bass' salary increased to $600 per month. On February 23, 1990, Stroud fired Bass.

Bass sued Happy Rest, Raybill and Stroud for intentional infliction of emotional distress, wrongful termination of employment and breach of contract. The trial court granted summary judgment[1] for Raybill and Stroud on all claims and for Happy Rest on the claims for intentional infliction of emotional distress and wrongful termination.

After a bench trial[2], the court entered a judgment against Happy Rest for $1,748.00 for ten percent of the net profits during the term of Bass' employment and for $171.42 wages due to Bass.

1. Bass' appeal, # 17708, from the summary judgment in favor of Happy Rest, Raybill and Stroud was dismissed on December 13, 1991, as not being a final appealable judgment pursuant to SDCL 15-6-54(b).

2. Although the complaint demanded a jury trial, after summary judgment was granted, the parties stipulated to try the remaining breach of contract claim to the court without waiving Bass' request for a jury trial on intentional infliction of emotional distress or wrongful termination.

3. The criteria for the court to consider in determining whether to pierce the corporate veil are fraudulent misrepresentation of a material fact, undercapitalization, failure to observe corporate formalities, absence of corporate records, payment by the corporation of individual obligations and use of the corporation to promote fraud, injustice or illegality. *Curtis v. Vlotho*, 313 N.W.2d 469 (S.D.1981); *Mobridge Community Industries v. Toure*, 273 N.W.2d 128 (S.D.1978).

4. "Incorporation for the purpose of achieving limited liability ... is one of the principal objectives of incorporation. Limited liability is enjoyed even by a controlling shareholder.
　　＊　　＊　　＊　　＊　　＊　　＊
Under corporate contracts, ordinarily the corporation, and not the shareholders, ... suffers the

## ISSUE ONE

### PERSONAL LIABILITY

*1. Piercing the Corporate Veil.*

■ The trial court granted summary judgment dismissing Stroud personally from the lawsuit. At trial and on appeal, Bass claimed that the corporate veil should be pierced and that Stroud should be personally liable as a shareholder and officer of Raybill and president of Happy Rest. Counsel for Stroud and the trial court agreed that the issue was whether the corporate veil should be pierced and the trial court held that none of the facts alleged by Bass justified piercing the corporate veil.[3]

■ An officer and shareholder is typically not liable for breach of contractual obligations[4] by the corporation, *Baatz v. Arrow Bar*, 452 N.W.2d 138 (S.D.1990), absent evidence of personal wrongdoing or facts justifying piercing the corporate veil. *Mobridge Community Industries v. Toure, supra,* 273 N.W.2d at 128; *Farmers Feed & Seed v. Magnum Enterprises*, 344 N.W.2d 699 (S.D. 1984). Stroud did not commit any personal wrong[5] except the alleged intentional inflic-

liabilities.... Shareholders, directors and officers who cause their corporation to breach its contract with a third party are usually not liable for inducing breach of contract." Henn and Alexander, *Corporations* 3rd Ed. (West 1983) § 146 at 344.

5. The at-will doctrine applies to wrongful termination claims by employees in South Dakota. SDCL 60-4-4; *Breen v. Dakota Gear & Joint Co., Inc.*, 433 N.W.2d 221 (S.D.1988); *Larson v. Kreiser's, Inc.*, 427 N.W.2d 833 (S.D.1988); In *Johnson v. Kreiser's, Inc.* 433 N.W.2d 225, 227 (S.D.1988), this Court held that "a contract action for wrongful discharge is more appropriate than a tort action." This Court has consistently refused to adopt a tort based cause of action for wrongful termination as an exception to the at-will doctrine. *Peterson v. Glory House of Sioux Falls*, 443 N.W.2d 653 (S.D.1989). *See e.g., Dirks v. Sioux Valley Empire Elec. Ass'n*, 450 N.W.2d 426 (S.D.1990), where a discharge question was dealt with as a breach of contract and *Stedillie v. American Colloid Co.*, 967 F.2d 274, 276 (8th Cir.1992), where Judge McMillian (with Judge Wollman concurring) called exceptions to the at-will doctrine "contract based." The corporate veil protects officers and shareholders from personal liability for contractual actions for wrongful termination.

tion of emotional distress.[6] Bass advanced fraudulent representation[7] of a material fact[8] to pierce the corporate veil.[9]

The trial court found no fraud. We agree. Happy Rest admitted the ten percent profit sharing provision of the promised written contract. Bass did not rely on any other promise from Happy Rest.

### 2. *Personal Liability for Intentional Torts.*

█ Bass has a claim for intentional infliction of emotional distress against Stroud personally. "Every person is responsible for injury to the person ... of another caused by his willful acts...." SDCL 20–9–1. Officers and employees of a corporation are personally liable for intentional torts. In *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987), sovereign immunity of a school district did not protect a school district official from personal liability for an intentional tort. In *Selchert v. Lien*, 371 N.W.2d 791 (S.D.1985), a liquor licensee *or employee* was liable under the then existing version[10] of SDCL 35–4–78 for selling liquor to an intoxicated person. In *Baatz v. Arrow Bar, supra*, 452 N.W.2d at 141, this Court limited personal liability to the "employee [who] violated the standard of care." The individual is primarily liable for

intentional wrongs and the employer is secondarily liable.

█ Employer or corporate liability for torts committed by an employee or officer is based on the doctrine of *respondeat superior*[11], which is a legal fiction designed to bypass impecunious individual tortfeasors for the deep pocket of a vicarious tortfeasor[12]. Stroud is personally liable for his intentional tort. Happy Rest may be liable too, through *respondeat superior*, if Stroud was acting on behalf of the corporation when he committed the alleged intentional infliction of emotional distress. *Bucholz, supra*. We reverse the summary judgment dismissing Stroud personally on the claim of intentional infliction of emotional distress and we remand for further proceedings[13].

### 3. *Raybill's Corporate Liability.*

█ Raybill was a Missouri corporation owned by Stroud and his wife. Stroud was president. Raybill owned all of the stock of Happy Rest and the land on which the Happy Rest Motel was situated. Raybill, however, did not manage the motel or hire or fire Bass. Bass cites no authority for holding Raybill liable.[14] We affirm the summary judgment dismissing Raybill.

6. *See Wangen v. Knudson*, 428 N.W.2d 242 (S.D. 1988), where defendant told an employee that the employee was fired when the employee actually was not fired. The court considered the defendant's action as an intentional infliction of emotional distress.

7. Five elements must be proved to establish false representation of a material fact: (1) false representation of a material fact, (2) the person making the representation knew it was not true (or made the statement recklessly with no reasonable grounds for believing it was true), (3) the representation was made to induce the other to act upon it, (4) the other person acted in reliance on it and (5) the other person was damaged by the reliance. *Curtis v. Vlotho, supra*, 313 N.W.2d at 471.

8. Stroud's promise to provide a contract, promise to pay ten percent of the net profits, promise to pay for painting and refurbishing rooms and subsequent refusal to pay and Stroud's statement that Bass had earned $4,000.00 to $5,000.00 as her share of the profits.

9. Undercapitalization, lack of records, failure to observe corporate formalities, payment of indi-

vidual obligations or illegal purpose were not established.

10. *Walz v. City of Hudson*, 327 N.W.2d 120 (S.D. 1982).

11. *Baatz v. Arrow Bar, supra*, 452 N.W.2d at 141; *Bucholz v. City of Sioux Falls*, 77 S.D. 322, 326, 91 N.W.2d 606, 608 (1958).

12. Piercing the corporate veil reverses the process. An impecunious corporation is interposed to protect the individual shareholders with deep pockets from personal liability for obligations of the corporation. The corporate veil is pierced to get at the real money.

13. Note that we also reverse the summary judgment dismissing the claim against both Stroud and Happy Rest for intentional infliction of emotional distress and remand for a jury trial. *See* text following note 23, *infra*.

14. SDCL 15–26A–60(6); *Corbly v. Matheson*, 335 N.W.2d 347 (S.D.1983).

## ISSUE TWO

### WRONGFUL TERMINATION.

■ Bass claimed wrongful termination of her employment with Happy Rest. Employees may be terminated at-will in South Dakota[15], except for (1) terminations that contravene public policy[16], (2) employees with express "for cause only" agreements or implied "for cause only" cases where an employee handbook contains a detailed list of exclusive grounds for discharge and a mandatory specific procedure the employer agrees to follow[17], or (3) an employee who accepted employment after being promised future promotion to a certain position[18].

■ Bass claims that Stroud and Happy Rest's conduct took her employment out of the at-will doctrine. First, Bass alleged that she was promised a contract that was never delivered. Bass must show the provisions in the "would be" contract that would take her out of the at-will doctrine. *Petersen v. Sioux Valley Hosp. Ass'n*, 486 N.W.2d 516 (S.D. 1992) (*Petersen I*). Bass only proved that the contract would include a provision to share ten percent of the profits. The agreement to share profits addresses the amount of compensation and does not take Bass out of the at-will doctrine. *See e.g., Merritt v. Edson Exp., Inc.*, 437 N.W.2d 528 (S.D. 1989).[19]

■ Second, Bass alleged that Happy Rest failed to provide worker's compensation insurance or benefits. Bass also claimed that when she was injured on the job deicing sidewalks, Stroud laughed because she "fell on her ass." Bass further claimed that she was fired for paying someone $26 to shovel the sidewalks after she fell. In addition, Bass claimed that not only did Happy Rest refuse to provide health insurance or work-er's compensation but also Stroud fired her after she was injured and canceled her private health insurance which she paid herself. Bass argued that Stroud and Happy Rest's actions violated a public policy that employees be treated decently.

This Court has repeatedly rejected the theory that there is an implied covenant of good faith and fair dealing in employment contracts. *Breen v. Dakota Gear & Joint Co., Inc., supra,* 433 N.W.2d at 224–25 (Sabers, J., dissenting on this issue); *Johnson v. Kreiser's, Inc., supra,* 433 N.W.2d at 228 (Sabers, J., specially concurring); *Butterfield v. Citibank of South Dakota, supra,* 437 N.W.2d at 864 (Sabers, J., dissenting on this and other issues). Therefore, alleged bad treatment by Happy Rest and Stroud do not take Bass out of the at-will doctrine.

Bass alleged no other contravention of public policy. There was no express written or oral agreement that termination would be "for cause only" and no handbook and mandatory procedures that implied that termination would be "for cause only." Happy Rest could fire Bass at-will. We affirm the summary judgment on Bass' claim of wrongful termination.

## ISSUE THREE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The trial court granted summary judgment on Bass' claim that Stroud and Happy Rest intentionally inflicted emotional distress on her. The tort of intentional infliction of emotional distress was first recognized in *First National Bank of Jacksonville v. Bragdon*, 84 S.D. 89, 167 N.W.2d 381 (1969). The elements were whether the act was intentional, unreasonable and the actor should have

15. SDCL 60-4-4; *Breen v. Dakota Gear & Joint Co., Inc., supra,* 433 N.W.2d at 223; *Larson v. Kreiser's, Inc., supra,* 427 N.W.2d at 834.

16. *Johnson v. Kreiser's, Inc., supra,* 433 N.W.2d at 227–28; *Niesent v. Homestake Mining,* 505 N.W.2d 781 (1993).

17. *Butterfield v. Citibank of South Dakota,* 437 N.W.2d 857 (S.D.1989); *Osterkamp v. Alkota Mfg., Inc.,* 332 N.W.2d 275 (S.D.1983); *Cutter v. Lincoln Nat. Life Ins. Co.,* 794 F.2d 352 (8th Cir.1986).

18. *Larson v. Kreiser's, Inc., supra,* 427 N.W.2d at 834.

19. Justice Wuest contrasted the general promise of a job "as long as you want it" in *Merritt* with the specific promise of promotion to president made in *Larson v. Kreiser's Inc., supra,* 427 N.W.2d at 834.

recognized that the act was likely to cause illness or emotional distress. This test was carried forward in *Ruple v. Brooks*, 352 N.W.2d 652 (S.D.1984), *Ruane v. Murray*, 380 N.W.2d 362 (S.D.1986) and *Groseth Intern. Inc. v. Tenneco Inc.*, 440 N.W.2d 276 (S.D.1989) (*Groseth II* ). *Tibke v. McDougall*, 479 N.W.2d 898, 906–07 (S.D.1992), rejected the "broader" rule of the foregoing line of cases and adopted the "narrower" rule from *Groseth Intern, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987) (*Groseth I* ) and *Mackintosh v. Carter*, 451 N.W.2d 285 (S.D. 1990).

 The elements of intentional [20] infliction of emotional distress are:

(1) *Extreme and outrageous* conduct by the defendant;

(2) Intent to inflict *severe* emotional distress;

(3) The extreme and outrageous conduct *caused* plaintiff's injury; and

(4) Plaintiff suffered an extreme *disabling* emotional response.

*Tibke v. McDougall, supra*, 479 N.W.2d at 906. Intentional infliction of emotional distress includes reckless conduct resulting in emotional distress. *Wangen v. Knudson*, 428 N.W.2d 242, 246 (S.D.1988); *Petersen v. Sioux Valley Hosp. Ass'n*, 491 N.W.2d 467 (S.D.1992) (*Petersen II* ).

Review of the trial court's grant of summary judgment is limited to the record before the trial court at the time of the ruling, not what later developed at trial. *Petersen I, supra*, 486 N.W.2d at 519. If under the evidence viewed most favorably to the non-moving party, there is no genuine issue of material fact, and, if the moving party is entitled to judgment as a matter of law, then summary judgment should be granted. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968). Summary judgment is an extreme remedy and is not a substitute for trial. A surmise that a party will not prevail is not enough. Perhaps because the determination of outrageous conduct by the defendant is initially for the court, *Tibke v. McDougall, supra*, 479 N.W.2d at 907, many of the cases of intentional infliction of emotional distress have come to this court on appeals from summary judgment [21].

 Bass claimed the following acts were outrageous, oppressive, malicious and fraudulent and caused her emotional distress:

(1) Failure to provide a written employment contract after promising one.

(2) Failure to allow time off and requiring Bass to work twenty-four hours per day and seven days per week.

(3) Agreeing to pay $50 per room for refurbishing and then refusing to pay when the work was done.

(4) Allowing Bass only two days to attend her mother's funeral.

(5) Refusing to allow Bass more time off after her daughter's graduation when Bass' husband's severe heart condition was aggravated by the trip.

(6) Promising to pay ten percent of the profits to Bass, telling Bass there were profits, firing Bass and refusing to pay.

(7) Forcing Bass to give Stroud a ride to the gas station when Bass was on her way to the hospital with her husband who was experiencing severe chest pain.

(8) Refusing to provide worker's compensation or health insurance and refusing to pay for Bass' injuries after she fell on the ice at work.

(9) Telling Bass she could not leave work to take her husband to the hospital and that her husband was going to die anyway.

(10) Firing and evicting Bass on seven hours notice for paying $26 to someone else to shovel snow after she was injured on the job.

*Mackintosh v. Carter, supra*, 451 N.W.2d at 286; *Tibke v. McDougall, supra*, 479 N.W.2d at 904; *Petersen I, supra*, 486 N.W.2d at 518; *Petersen II, supra*, 491 N.W.2d at 467.

---

**20.** *Intentional* infliction of emotional distress is to be distinguished from *negligent* infliction of emotional distress recognized in *Wright v. Coca Cola Bottling Co.*, 414 N.W.2d 608 (S.D.1987).

**21.** *See e.g., Ruane v. Murray, supra*, 380 N.W.2d at 364–65; *Groseth I, supra*, 410 N.W.2d at 164;

(11) Refusing to pay Bass' wages from February 15th to February 23rd.

(12) Canceling Bass' health insurance, which she paid herself, after she was fired.

At the hearing on the motion for summary judgment, the trial court noted the following items supported Bass' claim:

In June of '89 [Stroud] refused to let [Bass] have time off because her husband was having heart problems; she asked for a day off and he said no.

February of '90 husband went by air ambulance to Minneapolis. [Stroud] refused to hire replacement worker so she could accompany him.

February 5th, day after my husband returned, he was having heart pains, was scheduled to go back to the VA. [Stroud] came as we were leaving, said I had to give him a ride to the gas station before I could take my husband to the hospital. .

January of '90 she was deicing the sidewalk, [Stroud] said, so you fell on your ass, and laughed.

[When she paid someone $26.00 to shovel after she was injured on the job], [Stroud] called and ... says ... you will not lock up my business to take your son of a bitch husband to the doctor because the son of a bitch is going to die anyway.

Told me to have utilities to the motel cut off by 5:00 that afternoon in retaliation for me hiring the snow shoveler. The next day, February 23rd, he told my husband I was fired and that we had seven hours to leave. He came out to the motel and said how soon can you have your asses out of here. Said we had seven hours to get our asses out of the motel. Said I could be a nice guy and give you 24 hours, but you have seven hours to leave. And he tore the lock off the door and locked us out of the office.

Didn't pay the profits, canceled the health insurance that [she] was paying [her]self.

The trial court noted: "A person could reasonably conclude that those kinds of actions would be upsetting and cause distress. The language is what is found to be most offensive, probably." The court also noted that "It is the manner in which he did things which is offensive." The court further noted: "it is a jury question as to whether or not the defendant's acts constitute extreme and outrageous conduct."

The trial court recognized there was a genuine issue of material fact: "[O]f course that's her version of his acts, not his version. Obviously his version is quite a bit different. But that would be up to a fact finder to find out what's being truthful and what happened." "It's really the extreme conduct. ... [F]rom her point of view, here is a guy who knows about her husband's problems, he knows about all these problems, and he treats her this way and ... does all these nasty things, throws 'em out on their ass in the cold, so to speak."

The trial court was on the right track (and took the matter under advisement) but subsequently granted summary judgment. The trial court found that Bass had enough evidence to go to the jury on the other three elements of intentional infliction of emotional distress [22] but held as a matter of law that the conduct was not sufficiently extreme and outrageous to survive summary judgment.[23]

We agree with the analysis but disagree with the conclusion. The disputed facts in this case generated a jury question on intentional infliction of emotional distress. We

---

**22.** The trial court found that a jury could infer intent to inflict severe emotional distress from the evidence. The court also found that a doctor's report submitted by Bass was sufficient evidence of a causal connection to go to the jury. Finally, the court found that there was sufficient evidence in the doctor's report for a jury to find that she suffered depression and other symptomatic emotional distress.

**23.** The trial court may have hearkened to then-justice, now Judge Wollman's comments that "[s]peech that we judges find to be grossly offensive may seem less than outrageous to a jury composed of individuals daily exposed to the suffocating verbal crudities epidemic in a society in which so many have apparently lost the ability to express themselves in other than the most graphic of terms." *Ruple v. Brooks, supra,* 352 N.W.2d at 658 quoted in *Tibke v. McDougall, supra,* 479 N.W.2d at 906–07 n. 13. However, Justice Wollman's dissent held that this was a jury question.

reverse the summary judgment on Bass' claim of intentional infliction of emotional distress against Happy Rest and Stroud and remand for a jury trial.

■ Punitive damages may be considered in connection with intentional infliction of emotional distress. *Groseth II, supra,* 440 N.W.2d at 278–79; *Wangen v. Knudson, supra,* 428 N.W.2d at 246. Accordingly, we also reverse the trial court's dismissal of Bass' claim for punitive damages against both Stroud and Happy Rest and remand for further proceedings in connection with the jury trial.

### ISSUE FOUR

### BREACH OF CONTRACT

■ At trial, the court considered Bass' claim for ten percent of the profits during the time she was employed. Happy Rest admitted the agreement for ten percent of the profits. At trial, Happy Rest offered evidence that there were no profits from August 8, 1988, to February 23, 1990, which was the period of Bass' employment. The trial court found that Exhibit 1, offered by Bass, represented the profits for Happy Rest during the period of Bass' employment. Exhibit 1 showed profit of $4,600.00 for the first five months of 1989. The court divided by five and found that the monthly profit was $920 and then multiplied by the nineteen months Bass worked arriving at a total profit of $17,480.00. The court then found that Bass' ten percent was $1,748.00.

Happy Rest appeals the trial court's finding that there were $17,480.00 profits during the period of Bass' employment. The standard of review is whether the challenged findings of fact are clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970). The question is whether on the entire evidence this court is left with a definite and firm conviction that a mistake has been made. Ordinarily, this Court will not disturb a finding of fact when it is supported by the evidence, even if this court would have reached a different conclusion on the evidence. *In re Estate of Hobelsberger, supra,* 85 S.D. at 288–290, 181 N.W.2d at 458–59.

In this case, the trial court reached an unwarranted conclusion from Exhibit 1. Happy Rest introduced complete income statements for all nineteen months of Bass' employment and United States corporate income tax returns for 1988 and 1989. All of these documents show losses for 1988 and 1989. The trial court must consider all nineteen months. Without proof, the trial court assumed (based on common ownership of the corporations and assets by Stroud) that the financial records introduced by Happy Rest were designed to minimize income taxes and therefore incorrect. The trial court's finding is not supported by the evidence and is clearly erroneous. Bass failed to meet her burden of proof on the question of damages for 10% of the profit and Happy Rest is entitled to judgment against Bass on that portion of her breach of contract claim. We reverse the judgment in favor of Bass for $1,748.00 and remand to the trial court for entry of a judgment denying Bass' claim for ten percent of the profits and we affirm the judgment in favor of Bass for $171.42 [24].

Affirmed in part, reversed in part and remanded.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.

GORS, Circuit Judge, for AMUNDSON, J., disqualified.

---

24. The judgment for $171.42 for wages is not challenged in Happy Rest's brief on appeal and is deemed to be abandoned. SDCL 15–26A–60(4) and (6); *Peterson v. Safeway Steel Scaffolds Co.,* 400 N.W.2d 909 (S.D.1987).