**Bobbi RICHARDSON, Plaintiff and Appellant,**

v.

**EAST RIVER ELECTRIC POWER CO- OPERATIVE, INC., and Jeffrey L. Nelson, Defendants and Appellees.**

No. 18634.

Supreme Court of South Dakota.

Considered on Briefs Oct. 17, 1994.

Decided May 3, 1995.

Rehearing Denied June 8, 1995.

24

Lori Purcell Fossen of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellant.

William F. Day, Jr. of Lynn, Jackson, Shultz and Lebrun, Sioux Falls, for appellee, East River Elec.

Vincent J. Protsch, Howard, for appellee, Nelson.

WUEST, Retired Justice.

Bobbi Richardson had been employed by East River Electric Power Cooperative, Inc. (East River) since October 1985. In July 1992, her employment was terminated. Richardson brought action against her former employer claiming wrongful termination, negligent infliction of emotional distress, and intentional infliction of emotional distress. Richardson sought compensatory and punitive damages against both East River and its general manager, Jeffrey L. Nelson. East River and Nelson moved for summary judgment based on Richardson's employee-at-will status. The circuit court granted the defendants' motion and Richardson appeals. We affirm.

## FACTS

Bobbi Richardson was an employee of East River's since October 1985. In December 1991, members of East River's board of directors received a typewritten anonymous letter accusing the managers of East River, including defendant Nelson, of various unlawful and unethical practices and asking the board to investigate. In May 1992, a second anonymous letter, similar in nature to the first, was received by some of the board members. This second letter was also sent to outside agencies, including some in Washington, D.C. In June 1992, Nelson, general manager at East River, spoke to a group of about eighty East River employees about the letters during a regular company meeting and requested employees with any knowledge of their authorship to come forward. Two employees from this group gave information to Nelson which led him to believe plaintiff Richardson had authored the first letter.

On July 20, 1992, Richardson's immediate supervisor was informed of Nelson's intention to confront Richardson that afternoon and advise her he had information indicating she had written the first anonymous letter. The supervisor knew Nelson planned to give Richardson the opportunity to resign or be terminated. Later that day, Richardson, her immediate supervisor, Nelson, and another manager met in East River's conference room. Nelson told Richardson he had credible evidence that she wrote the letter but he did not tell her what that evidence was. She denied that she was the author but indicated she knew the identity of that person. Nelson then gave Richardson the opportunity to resign. When she did not do so, he informed her she was terminated effective immediately. Her immediate supervisor escorted her to her office where she cleaned out her desk and left that afternoon.

Richardson appealed her termination under East River's employee appeals policy. While her appeal was pending, East River advertised her vacant position. When her appeal was denied, Richardson claims she sought counseling and medical attention to alleviate the psychological and physical effects of her termination. Thereafter, Richardson brought the lawsuit giving rise to this appeal.

## ANALYSIS AND CONCLUSION

■ The trial court granted defendants' motion for summary judgment on the basis that Richardson was an employee-at-will and, as such, could be terminated at any time by East River. On a motion for summary judgment, the trial court must consider the following:

> [T]he evidence must be viewed most favorably to the non-moving party; the movant has the burden of proof to clearly show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; summary judgment is not a substitute for trial; a belief that the non-moving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be sham, frivolous, or unsubstantiated; summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching upon the existence of a genuine issue of material fact should be resolved against the movant.

*Tibke v. McDougall,* 479 N.W.2d 898, 904 (S.D.1992); *Pickering v. Pickering,* 434 N.W.2d 758, 760 (S.D.1989); SDCL 15–6–56(c). On appeal from a motion for summary judgment, our task is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. Affirmance of a summary judgment is proper if there exists any basis which supports the ruling of the trial court. *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 837 (S.D. 1990); *Pickering,* 434 N.W.2d at 760. We will affirm a grant of summary judgment only if there are no genuine issues of material fact and the legal questions have been correctly decided. *Butterfield v. Citibank of S.D., N.A.,* 437 N.W.2d 857, 858 (S.D.1989). " 'Summary judgment is generally not feasible in negligence cases because the standard of the reasonable man must be applied to conflicting testimony.... It is only when the evidence is such that reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this occurs rarely.' " *Trammell v. Prairie*

*States Ins. Co.*, 473 N.W.2d 460, 462 (S.D. 1991) (quoting *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212–13, 157 N.W.2d 19, 22 (1968)) (citations omitted).

 South Dakota's employment-at-will doctrine is codified at SDCL 60–4–4. The statute provides:

An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute.

In 1983, this court adopted a narrow exception to that doctrine in *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983). In *Osterkamp*, we held that an employee handbook could constitute a contract of employment where the employer specifically agrees to discharge employees "for cause only." Where such an agreement exists in the handbook and an employer fails to abide by its terms in discharging an employee, that employee has a cause of action for wrongful discharge of employment based on breach of the agreement. We defined the *Osterkamp* exception in later cases as providing two possible ways an employee handbook could create a "for cause only" agreement:

First, such an agreement may be found where the handbook explicitly provides, in the same or comparable language, that discharge can occur 'for cause only.' Second, a 'for cause only' agreement may be implied where the handbook contains a detailed list of exclusive grounds for employee discipline or discharge and, a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination.

*Butterfield*, 437 N.W.2d at 859; *Breen v. Dakota Gear & Joint Co., Inc.* 433 N.W.2d 221 (S.D.1988). The handbook language must clearly indicate the employer's intention to surrender his statutory power under SDCL 60–4–4 to terminate an employee at will. *Butterfield*, 437 N.W.2d at 859.

 Richardson argues that the detailed provisions of East–River's employee handbook regarding disciplinary and termination procedures implied a "just cause only" agreement under the second exception to *Osterkamp*, removing her from employment-at-will status. We do not agree. *Osterkamp* re-quires a detailed list of *exclusive* grounds for discharge as well as a mandatory and specific termination procedure. East River's Policy No. 514, Termination of Employment, provides in Section II, B, 2, five extreme offenses which will result in immediate termination. Section II, B, 3 provides: "There are other circumstances under which an employee may be terminated." This section further provides these other circumstances must be consistent with the handbook's employee discipline policy (Policy No. 515) and that termination will be the discipline of last resort. Section II, B, 4 acknowledges that "other reasons for termination may arise from time to time which have nothing to do with employee behavior," citing reductions in force or elimination of positions. Policy No. 515, Employee Discipline, Section II, A, provides a detailed list of causes for disciplinary action. The language in this section makes clear the list is not exclusive: "Causes for which disciplinary action can be taken include but are not limited to the following items." Clearly, East River's employee handbook, which provides a non-exclusive list of grounds for termination and disciplinary actions (which includes termination), precludes a "just cause only" agreement under the second *Osterkamp* exception to the at-will employment doctrine.

 Additionally, we point to Policy No. 515, Employee Discipline, Section III, B, 2 for further proof that Richardson's employee status at East River was at-will. This section states the notice provisions of the policy will not apply:

when the cause for disciplinary action is determined by all appropriate levels of management including the General Manager not to be cause for termination according to Policy 514 [listing specific, but not exclusive grounds for termination], but is of a *sufficiently serious nature to require the imposition of some or all of the Disciplinary Actions* described in section IV of this policy without administering the [notice] procedures described [above] (emphasis added).

The disciplinary actions described in section IV of the policy include termination. We

believe this paragraph of East River's employee handbook provides sufficient discretion to the managers to take action, including termination of an employee without prior notice, when they feel such action is appropriate. We note termination under these circumstances can only occur when "all appropriate levels of management including the General Manager" are in agreement as to the disciplinary action to be taken. When Richardson's employment was terminated, her immediate supervisor, his supervisor, and the general manager were present in the conference room. We believe this constitutes "all appropriate levels of management including the General Manager" as required by East River's policy. This managerial discretion to terminate an East River employee precludes a "just cause only" agreement and, absent such agreement, Richardson's employment was at-will. *Osterkamp,* 332 N.W.2d at 277; *Butterfield,* 437 N.W.2d at 859 (language in Citibank's handbook permitting termination of employees without notice "in appropriate instances" was held to reflect the employee's at-will status and the employer's reservation of right to terminate its employees whenever it determined termination was appropriate). In conclusion, we find nothing either explicit or implied in East River's employee handbook that reveals an intention by East River to surrender its statutory power to terminate an employee under SDCL 60-4-4.

Richardson's second argument, that her wrongful discharge was a question of fact for the jury to consider, fails in light of the trial court's decision, and our affirmance, of her at-will employment status. The reason for Richardson's discharge is not material to the resolution of the issue in this case. The only question, which is a question of law and not one of fact, is whether Richardson's employment with East River was at-will under SDCL 60-4-4. We agree with the trial court's determination that Richardson was an at-will employee.

Finally, Richardson argues that her cause of action for intentional infliction of emotional distress should not have been dismissed as a matter of law and cites *Bass v. Happy Rest, Inc.,* 507 N.W.2d 317 (S.D.1993) as support-

ing authority. We noted in *Bass* determination of the first element of an intentional infliction of emotional distress action, whether the defendant's conduct was extreme and outrageous, *is initially for the court. Bass,* 507 N.W.2d at 322; *Tibke,* 479 N.W.2d at 907. Restatement (Second) of Torts § 46 cmt. h (1965) provides:

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Id.* We have previously cited this Restatement section with approval. *See Reeves v. Reiman,* 523 N.W.2d 78 (S.D.1994); *Tibke,* 479 N.W.2d 898; *Wangen v. Knudsen,* 428 N.W.2d 242 (S.D.1988); *Ruane v. Murray,* 380 N.W.2d 362 (S.D.1986); *Ruple v. Brooks,* 352 N.W.2d 652 (S.D.1984). We have also noted intentional infliction of emotional distress includes reckless conduct resulting in emotional distress. *Bass,* 507 N.W.2d at 322; *Petersen v. Sioux Valley Hosp. Ass'n,* 491 N.W.2d 467, 469 (S.D.1992) (*Petersen* II); *Wangen,* 428 N.W.2d at 246.

South Dakota's definition of the first element of this tort, extreme and outrageous conduct, as "conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind," is well settled. *Tibke,* 479 N.W.2d at 907 (quoting *Groseth Intern., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159, 169 (S.D.1987) (*Groseth* I); and citing *Ruple,* 352 N.W.2d 652; *Wright v. Coca Cola Bottling Co.,* 414 N.W.2d 608 (S.D.1987); W. Prosser, Handbook of the Law of Torts § 12 (4th Ed.1971)). "For conduct to be 'outrageous,' it must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tibke,* 479 N.W.2d at 907 (citation omitted).[1]

---

1. Regarding this first element, the Restatement

comment d states the defendant's conduct must

We have affirmed summary judgments where the first element of this tort was not met, noting this determination is initially for the court. *See Nelson v. WEB Water Dev. Ass'n, Inc.*, 507 N.W.2d 691 (S.D.1993) (employee terminated prior to expiration of his three-year employment contract following public meeting at which motion was made to terminate him and employee's job performance was discussed therein); *Speck v. Fed. Land Bank of Omaha*, 494 N.W.2d 628 (S.D. 1993) (debtors' intentional infliction of emotional distress claim against bank which foreclosed on debtors' land failed to cite specific facts which would constitute extreme and outrageous conduct); *Tibke*, 479 N.W.2d 898 (members and directors of horse club terminated plaintiff's club membership); *Mackintosh v. Carter*, 451 N.W.2d 285 (S.D.1990) (parents of plaintiffs' son's girlfriend reported his conversations with them regarding thoughts of suicide and unhappiness at home to Department of Social Services); *Groseth Intern'l, Inc. v. Tenneco, Inc.*, 440 N.W.2d 276 (S.D.1989) (*Groseth* II) (parent company sold franchise agreement without notice to farm equipment dealer).

On the other hand, we have reversed summary judgments where we determined the first element was not met and remanded for trial those cases where there existed sufficient question to present the issue to a jury. *See Reeves*, 523 N.W.2d 78 (defendant walked plaintiff, while she was nude and inebriated, down the hall in front of classmates and placed her on floor or in bed with another male, even though defendant knew the other male had a sexually transmittable disease); *Kjerstad v. Ravellette Publications, Inc.*, 517 N.W.2d 419 (S.D.1994) (employer peered into hole in restroom wall while three female employees used restroom); *Bass*, 507 N.W.2d 317 (employer refused to pay promised employee benefits and wages, refused employee sufficient time off for husband's health problems, forced employee to give employer ride to gas station before she would be allowed to take husband having heart pains to hospital, spoke to employee using obscene language, fired and evicted employee and her husband with seven hours' notice for employee's paying someone $26 to shovel show after she injured her back); *Petersen v. Sioux Valley Hosp. Ass'n.*, 486 N.W.2d 516 (S.D.1992) (*Petersen* I) and *Petersen II*, 491 N.W.2d 467 (employer's knowledge of employee's specific fear of confrontation and his failure to warn her of a confrontational-type meeting presented a jury question regarding reckless conduct); *French v. Dell Rapids Comm. Hosp., Inc.*, 432 N.W.2d 285 (S.D. 1988) (employer fired employee based on medical staff complaints about his performance, after employee was hired without the academic credentials originally required and after job announcement had been rewritten to accommodate his lesser credentials); *Wangen*, 428 N.W.2d 242 (employer and employer's corporate counselor gave employee ultimatum regarding entering in-patient alcohol treatment center or be fired despite their knowledge that employee was under psychiatric care and taking prescribed medication for depression); *Ruane*, 380 N.W.2d 362 (landlord's knowledge of tenant's psychiatric problems, his sexual advances and subsequent harassment of her presented jury question regarding first element of this tort); *Ruple*, 352 N.W.2d 652 (obscene phone calls constituted extreme and outrageous conduct where caller had knowledge that plaintiff had recently endured trauma at work and been fired).

In the present case we do not find sufficient evidence the first element was met. The discussion which led to Ms. Richardson's termination took place in a private conference room at East River with herself, her immediate supervisor, the general manager, and one other manager being present. There is no evidence that voices were raised, profanity used, or that Ms. Richardson was not given an opportunity to rebut the allegations against her. Following this discussion, Ms. Richardson was escorted to her office by her immediate supervisor where she gathered her personal belongings and left the

___

be extreme and outrageous, and it is not enough that the defendant has intended to inflict emotional distress. Comment g provides that one is never liable when doing no more than insisting upon one's legal rights in a permissible way, "even though he is well aware that such insistence is certain to cause emotional distress."

building. The conduct was civilized, if not particularly pleasant for Ms. Richardson. We recognize that a person whose employment is terminated by discharge will likely be upset, but we find nothing in the conduct of the defendants that rises to the level of extreme or outrageous conduct.[2] Likewise, we have reviewed Ms. Richardson's claim of negligent infliction of emotional distress and find no evidence to support that claim.

We affirm the trial court on all issues.

MILLER, C.J., concurs.

AMUNDSON and KONENKAMP, JJ., concur in part and dissent in part.

SABERS, J., dissents.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

AMUNDSON, Justice (concurring in part and dissenting in part).

I concur with the majority, but join Justice Sabers' dissent on the emotional distress and punitive damage issues.

KONENKAMP, Justice (concurring in part and dissenting in part).

I join the majority in affirming the dismissal of the negligent and intentional infliction of emotional distress and punitive damage claims. On the other hand I agree with Justice Sabers that the employee manual created a "for cause" only contract and so to that extent I join the dissent.

SABERS, Justice (dissenting).

1. **CONTRARY TO THE LAW AND THE EMPLOYEE'S MANUAL, THE TRIAL COURT GRANTED SUMMARY JUDGMENT UPHOLDING TERMINATION, BASED SOLELY ON RETALIATION FOR AN ANONYMOUS LETTER, WITHOUT PROOF OF AUTHORSHIP, AGAINST AN EXCELLENTLY RATED NONPROBATIONARY EMPLOYEE.**

Bobbi Richardson worked as a permanent employee of East River from October 1985 until her termination on July 20, 1992. During her employment, her job performance was excellent as evidenced by a performance review conducted just two months prior to her termination.

East River's Employee Manual constituted a contract in which East River agreed to follow certain procedures prior to terminating employees, and to surrender its right to terminate employees at will. "Where a provision of a contract is ambiguous, evidence must be introduced to determine what the intentions of the parties were and such evidence creates a question of fact which must be resolved by a jury ... Summary judgment will be affirmed only if there are no genuine issues of material fact and the legal questions have been correctly decided." *Butterfield v. Citibank of S.D., N.A.*, 437 N.W.2d 857, 858 (S.D.1989) (citations omitted). Here, there are genuine issues of material fact and the legal questions have been incorrectly cited.

In accordance with *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983), East River's Employee Manual provides, in the same or comparable language, the discharge can occur "for cause only." East River's Employee Manual contains a section entitled "Series 500—Employee Relations." Section II(K) of policy number 501 provides:

New employees are considered probationary for the first twelve (12) months in their position. New employees may be dismissed *with or without cause at any time during the probationary period* and promoted and transferred employees may be demoted or reduced to their original position *with cause*. (Emphasis added.)

Bobbi Richardson was neither a new nor a probationary employee. She had obviously been there longer than twelve months. Therefore, she could be demoted or reduced to her original position only with cause.

If East River's Employee Manual is interpreted to mean that regular employees may be terminated without cause, Section II(K) of

---

**2.** Neither Richardson's employment history, nor Nelson's thoughts or intent (the second element of an intentional infliction of emotional distress claim), factor into an examination of the *actual conduct* which must be extreme and outrageous.

policy 501 becomes senseless. If regular employees could be terminated without cause, there would be no difference between probationary and regular employees and no reason to point out that probationary employees could be terminated with or without cause.

East River has agreed that employees can be demoted for cause only. Termination is the ultimate demotion. Because East River has agreed to demote for cause only, it can likewise terminate for cause only. Any other construction makes no sense.

A similar provision was contained in the employee handbook in *Petersen v. Sioux Valley Hospital Association,* 486 N.W.2d 516 (S.D.1992) (*Petersen* I). However, this court noted that the provision was followed by a disclaimer stating that the handbook was not a contract of employment and a further statement which explicitly stated: "Employment can be terminated by the employee or the employer *at any time for any reason.*" *Id.* at 520. (Emphasis in original). East River's Manual contains no such disclaimer or explicitly terminable-at-will language. Therefore, the clear import of Section II(K) is that regular employees may be terminated for cause only.

In June of 1992, East River's manager, Jeff Nelson, called a meeting of approximately 80 employees and asked for information regarding the authorship of the anonymous letter. At this meeting, Nelson stated that he "layed awake at night thinking of ways to retaliate" against the author.

Under these circumstance, a genuine material issue of fact arises as to the identity of the author of the anonymous letter. East River has an obligation to show that no genuine issues of material fact exist. *Dept. of Rev. v. Thiewes,* 448 N.W.2d 1, 2–3 (S.D. 1989). They have failed in their burden of proof to do this. Secondly, to eliminate the genuine issue of material fact, East River had to prove that Bobbi Richardson wrote the letter. They have also failed to do this.

## 2. THE TRIAL COURT INCORRECTLY GRANTED SUMMARY JUDGMENT AS TO EMOTIONAL DISTRESS AND PUNITIVE DAMAGE CLAIMS.

In *Bass v. Happy Rest, Inc.,* 507 N.W.2d 317 (S.D.1993), this court held that a jury issue was presented on an intentional infliction of emotional distress claim in connection with a wrongful termination claim, even though the court found the employee could be fired at will. Similarly, the evidence viewed in the light most favorable to Richardson presents a question of fact on the negligent and/or intentional infliction of emotional distress claims.

The evidence shows that until she was terminated, Bobbi Richardson had been a long-time, faithful and dedicated East River employee. Jeff Nelson terminated Richardson relying on the word of an employee who was herself considered a possible author of the anonymous letter. Further, the evidence in the record shows that some of the information in the letter was known only to top East River officials and the accusing employee. The evidence also shows that Richardson was never asked if she wrote the letter, and was not told until long after her termination had been finalized, what evidence had been presented against her. Finally, Richardson denies writing the letter. Taken in a light most favorable to Richardson these facts present a jury issue as to whether East River and Nelson's acts were reasonable, and whether Richardson would be foreseeably affected, both physically and mentally by such acts.

Intentional infliction of emotional distress includes reckless conduct resulting in emotional distress. *Bass,* 507 N.W.2d at 322; *Petersen v. Sioux Valley Hospital,* 491 N.W.2d 467, 469 (S.D.1992) (*Petersen* II).

As indicated, Nelson admitted he "layed awake in bed at night thinking of ways to retaliate" against the author of the letter. Richardson argues that "retaliate" means "to take revenge" and that it can hardly be argued that one can take revenge unintentionally. Richardson further claims that Mr. Nelson took his revenge on the wrong person. These and other questions are appropriate for a jury. *Petersen I,* 486 N.W.2d at 519–20; *Wright v. Coca Cola Bottling Co.,* 414 N.W.2d 608, 609–10 (S.D.1987).

Applying the information in the record to *Bass,* 507 N.W.2d at 317; *Wangen v. Knud-*

*son,* 428 N.W.2d 242, 247 (S.D.1988) and *Petersen I,* 486 N.W.2d at 519–20, reasonable minds could differ, and the evidence when viewed most favorably to Richardson presents jury questions on negligent and intentional infliction of emotional distress.

Finally, "[p]unitive damages may be considered in connection with intentional infliction of emotional distress." *Bass,* 507 N.W.2d at 324. Finally, Richardson argues that she was accused, tried, convicted and sentenced for a wrong she did not commit, all in the space of about ninety minutes.

East River argues that Richardson did not suffer enough emotional distress to warrant presenting her case to a jury. However, South Dakota precedent indicates that Richardson's claim should go to a jury. *See e.g., Petersen I,* 486 N.W.2d at 519 (only evidence of emotional distress was plaintiff's affidavit stating circumstances surrounding termination caused her to be "nervous and upset."); *Bass,* 507 N.W.2d at 323 n. 22 (evidence of emotional distress consisted of evidence of "depression and other symptomatic emotional distress."). *Wangen,* 428 N.W.2d at 248 (evidence of emotional distress consisted of treatment for depression). In each of these cases, there was "sufficient evidence so that reasonable minds could differ on whether [plaintiff] suffered from emotional distress." *Id.* at 248–49. Bobbi Richardson testified that she suffered "emotional damages beyond belief" and that she had seen a counselor and a physician and received prescription medication in connection with her mental state resulting from her termination. Clearly, reasonable minds could differ on whether Richardson suffered emotional distress. Therefore, her case should go to the jury.